UNITED STATES of America, Plaintiff–Appellee,

v.

**Michael A. SMITH, and Kwabene D. German, a/k/a Kwabene Gibson, Defendants–Appellants.**

Nos. 93–3265, 93–3738.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1994.

Decided Sept. 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 6, 1994.

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN (argued), for U.S.

David L. Chidester, Valparaiso, IN (argued), for Michael A. Smith.

Joan Kouros, Kouros & Kouros, Schererville, IN (argued), for Kwabene D. German aka Kwabene Gibson.

Before ESCHBACH, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Michael Smith and Kwabene German were each convicted of multiple federal drug violations. Both defendants now appeal. For the reasons that follow, we affirm Mr. Smith's conviction and sentence; but we affirm in part and reverse in part Mr. German's conviction and remand his case to the district court for resentencing.

I

In the course of routinely monitoring Federal Express packages coming through the Chicago area, drug authorities were alerted to a heavily sealed parcel by their canine patrol dog Rex. Upon obtaining a search warrant, the authorities opened the package and found over 960 grams of crack cocaine. After removing all but approximately 27 grams of the crack cocaine and resealing the package, an undercover DEA agent posing as a Federal Express employee delivered the package to the addressee—Troy Coleman, 1501 Tompkins Street, Gary, Indiana. One of the defendants, Mr. Smith, answered the door at 1501 Tompkins; the DEA agent, who was wearing a body wire, asked Mr. Smith if he was Troy, to which Mr. Smith stated "yes." Tr. 325–26. Mr. Smith then signed his name on the delivery record as "Troy Coleman" and accepted the package. After Mr. Smith accepted the package under the pretense of being Troy Coleman, a search warrant was issued for the premises. The authorities arrested Mr. Smith and seized telephone records. Mr. Smith later signed a *Miranda* waiver and gave a signed statement, which included the following: "This is the first time I ever accepted a package. I felt that cocaine was being delivered." Tr. 358–59.

Mr. German, who had been at the house intermittently on the day of the delivery, was at the house at the time the authorities executed the search warrant. He grabbed the drug package and exited out a back window. A DEA agent who saw Mr. German jump out of the window identified himself and ordered Mr. German to stop. Mr. German disregarded the agent, leaped over a nearby fence, and ran. The DEA agent gave chase. Mr. German continued to run even after the agent fired his service revolver at a hostile dog in a yard through which both men were running. Mr. German eventually tripped and was apprehended.

Both Mr. Smith and Mr. German were charged in a three-count indictment with: (1) conspiring to possess with intent to distribute 960 grams of crack cocaine in violation of 21 U.S.C. § 846; (2) possessing with intent

to distribute 960 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1); and (3) using a communication facility in committing the offense of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 843(b).

At trial, Mr. Smith testified that the Federal Express package containing the crack cocaine belonged to Mr. German; he stated that, on the day of the events at issue, Mr. German had asked him if he minded having "a package" delivered at his house. Tr. 613–14. Mr. Smith testified that, although he agreed to Mr. German's request, he did not know what the expected package contained; on cross-examination, Mr. Smith conceded that, as he indicated in the statement he made to the authorities following his arrest, he had an idea that the package contained cocaine. Mr. Smith also testified that he accepted and signed for the package in the name of Troy Coleman because he thought that might have been Mr. German's name. Despite the fact that Mr. Smith and his wife Kim testified to having known Mr. German for five years, both stated that they knew him only as "Pooh." Mr. German offered no evidence at trial, but rather moved for acquittal on the basis of the government's evidence. The district court denied his motion, as well as motions by both defendants seeking severance.

Mr. Smith was acquitted of the conspiracy count and the underlying substantive count of possession with intent to distribute. He was convicted, however, of the lesser included offense of simple possession of cocaine base in violation of 21 U.S.C. § 844(a); he was also convicted of the § 843(b) communications offense. Mr. Smith was sentenced to 82 months' imprisonment. Mr. German was convicted on all three counts and sentenced to 210 months' imprisonment.

## II

### A. *Michael Smith*

On appeal, Mr. Smith raises three issues. First, he argues that simple possession of cocaine base (i.e., crack) under 21 U.S.C. § 844(a) is not a lesser included offense of possession of cocaine base with intent to distribute under 21 U.S.C. § 841(a)(1). Second, Mr. Smith contends that the government failed to present sufficient evidence to support either the § 844(a) simple possession conviction or the § 843(b) communications conviction. Finally, he submits that the district court erred in not severing his trial from Mr. German's. We now address each issue.

### 1.

■ Although Mr. Smith was acquitted of possession of cocaine base with intent to distribute under § 841(a) and of conspiracy to do so under § 846, he was convicted of simple possession of cocaine base under § 844(a). On appeal, he submits that simple possession of cocaine base under § 844(a) is not a lesser included offense of possession with intent to distribute under § 841(a)(1). According to Mr. Smith, the district court therefore erred in instructing the jury that it could find him guilty of the lesser included offense of simple possession of cocaine base if it decided not to convict him of possession with intent to distribute. He gives two reasons. First, Mr. Smith contends that U.S.S.G. § 2D2.1, which provides that a defendant convicted of possession of more than five grams of cocaine base be sentenced as if convicted of possession with intent to distribute, demonstrates that simple possession of cocaine base cannot be considered a lesser included offense of possession with intent to distribute. Second, Mr. Smith claims that, unlike under § 841(a), the quantity of the cocaine base possessed in a conviction under § 844(a) is an essential element of the offense that must be determined by the jury for the offense to constitute a felony. In Mr. Smith's case, the jury was not instructed to make any determination on the quantity of cocaine base involved.

■ We cannot accept Mr. Smith's argument. First, the existence of similar or even identical penalties for two different offenses—in this case, § 841(a) and § 844(a)—does not preclude one of those offenses from being a lesser included offense of the other. The appropriate focus in ascertaining a lesser included offense is not on the penalties of the two crimes but on the elements of each

crime. As the Supreme Court has made clear, if "the elements of the lesser offense are a subset of the elements of the charged offense," a lesser included offense instruction is appropriate. *Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989); *see also United States v. Windsor*, 981 F.2d 943, 946 (7th Cir.1992) (applying *Schmuck's* elements inquiry); *United States v. Chrismon*, 965 F.2d 1465, 1476 (7th Cir.1992) (same). As a result, we find "no reason to create the additional and novel requirement that the penalty for the lesser offense be lower than for the greater." *United States v. Harley*, 990 F.2d 1340, 1344 (D.C.Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 236, 126 L.Ed.2d 190 (1993).

■ Second, we cannot accept Mr. Smith's contention that the quantity of cocaine base possessed is an essential element of possession of cocaine base in violation of § 844(a). Instead, we agree with *United States v. Monk*, 15 F.3d 25, 27 (2d Cir.1994), which held that quantity is not an element of simple possession of cocaine base under § 844(a). In that case, as in Mr. Smith's, the jury acquitted the defendant of possession with intent to distribute under § 841(a), but convicted him of possession of cocaine base under § 844(a). Although the jury made no determination on the quantity of cocaine base possessed, the district court sentenced the defendant as a felon because he had pos-

sessed more than five grams of cocaine base. Section 844(a) makes simple possession of less than five grams of cocaine base a misdemeanor (i.e., the maximum penalty does not exceed one year, *see* 18 U.S.C. § 3559(a)) if a defendant has no prior convictions for possession of a controlled substance.[1] The defendant in *Monk* —who, like Mr. Smith, had no such prior convictions—therefore argued on appeal that, absent a jury finding on the quantity of cocaine base possessed, he could be sentenced only as a misdemeanant.

The Second Circuit disagreed. It began its analysis by restating well-established circuit law holding that drug quantity is not an element of the offense of possession with intent to distribute under § 841(a). *See United States v. Campuzano*, 905 F.2d 677 (2d Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). The court then compared § 841(a) and § 844(a) and concluded that, just as § 841(a)'s language "'prohibits the distribution of *any* amount of cocaine,'" so § 844(a)'s similar language "prohibits the possession of *any* amount of a controlled substance, including crack." *Monk*, 15 F.3d at 27 (quoting *Campuzano*, 905 F.2d at 679). Furthermore, the court was "not persuaded that the different architecture of the two statutes reflected a congressional intent to make the quantity of drugs an element of the crime of simple possession, but not an element of the more

1. In relevant part, 21 U.S.C. § 844(a) reads as follows (with brackets added):

[1] It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice.... [2] Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both, except that if he commits such offense after a prior conviction under this subchapter or subchapter II of this chapter, or a prior conviction for any drug or narcotic offense chargeable under the law of any State, has become final, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years, and shall be fined a minimum of $2,500, except, further, that if he commits such offense after two or more prior convictions under this subchapter or subchapter II of this chapter, or

two or more prior convictions for any drug or narcotic offense chargeable under the law of any State or a combination of two or more such offenses have become final, he shall be sentenced to a term of imprisonment for not less than 90 days but not more than 3 years, and shall be fined a minimum of $5,000. [3] Notwithstanding the preceding sentence, a person convicted under this subsection for the possession of a mixture or substance which contains cocaine base shall be imprisoned not less than 5 years and not more than 20 years, and fined a minimum of $1,000, if the conviction is a first conviction under this subsection and the amount of the mixture exceeds 5 grams, if the conviction is after a prior conviction for the possession of such a mixture or substance under this subsection becomes final and the amount of the mixture or substance exceeds 3 grams, or if the conviction is after 2 or more prior convictions for the possession of such a mixture or substance under this subsection become final and the amount of the mixture or substance exceeds 1 gram.

serious crime of possession with intent to distribute." *Id.* It stated that to follow those cases reaching "a different conclusion just because § 841 is subdivided between crime and penalty, while § 844 is not, would make an idol to exalting form over substance." *Id.* The court thus held that it is the district court's responsibility to determine at sentencing the quantity of cocaine base a defendant possessed, even when that quantity exceeds five grams and thus renders the offense a felony. *Id.*

We agree with the Second Circuit's reasoning. Our circuit has long held that "[q]uantity is not a substantive element of a § 841(a) offense." *United States v. Whitley*, 905 F.2d 163, 165 (7th Cir.1990); *see also United States v. Trujillo*, 959 F.2d 1377, 1381 (7th Cir.) ("This court has held consistently that the quantity of drugs involved in a narcotics case does not constitute a substantive element of the drug offense."), *cert. denied*, —— U.S. ——, 113 S.Ct. 277, 121 L.Ed.2d 204 (1992). Rather, quantity in a § 841 offense is an independent determination for the sentencing judge to make. *Id.* at 1382. We find no reason to depart from that approach in construing § 844(a). As the Second Circuit pointed out, the language in the first sentence of § 844(a), which sets forth the prohibition against possession of controlled substances, is to a great extent the same as the prohibitory language found in § 841(a). *See United States v. Rein*, 848 F.2d 777, 784 (7th Cir.1988) (stating that the prohibitory "provisions of section 844(a) are a word-for-word subset of section 841(a)(1)"). Moreover, we are not convinced that the fact that § 844(a)'s penalty provisions are not set off in a separate subsection with the caption "penalties," as in § 841, is of significant import. *But see United States v. Puryear*, 940 F.2d 602, 603 (10th Cir.1991) (concluding that quantity of cocaine base possessed is an element of a § 844(a) offense in part because, unlike § 841, "[t]he statute contains no separate penalty section, but rather interweaves both definitional and penalty provisions throughout"). The dearth of any legislative history indicating that Congress intended to create a new crime (i.e., a crime in which quantity of cocaine base would be an element of the offense) when it added the cocaine

base provision to § 844(a) in 1988 counsels against making a formalistic conclusion about an ambiguous structural feature in the statute. *Cf. United States v. Michael*, 10 F.3d 838, 841 (D.C.Cir.1993) (stating that the legislative history of § 844(a)'s cocaine base provision is "ambiguous, but largely consistent with a congressional intent merely to enhance sentences for those offenders who possess 5 grams or more of cocaine base").

We also note our respectful disagreement with the reasoning of *United States v. Sharp*, 12 F.3d 605 (6th Cir.1993). In that case, the Sixth Circuit held that, "[b]ecause a first offender cannot be guilty of a simple possession felony unless the amount of crack possessed exceeds five grams," the "amount possessed constitutes an element of the offense." *Id.* at 606. The court concluded that quantity had to be considered an element of the offense to comply with the "principle that a defendant is entitled to have a jury of his peers determine whether or not he has committed a felony." *Id.* at 608. It reasoned that to allow a sentencing judge to make "factual findings that convert what would otherwise be a misdemeanor into a felony" would constitute "an impermissible usurpation of the historic role of the jury." *Id.; see also Puryear*, 940 F.2d at 604 ("Absent a jury finding as to the amount of cocaine, the trial court may not decide of its own accord to enter a felony conviction and sentence, instead of a misdemeanor conviction and sentence, by resolving the crucial element of the amount of cocaine against the defendant.").

Our disagreement with this reasoning stems from the fact that the Supreme Court made clear in *Spaziano v. Florida*, 468 U.S. 447, 459, 104 S.Ct. 3154, 3161, 82 L.Ed.2d 340 (1984), that the "Sixth Amendment never has been thought to guarantee a right to jury trial determination" of "the appropriate punishment to be imposed on an individual." *See also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir.) (stating that "the sixth amendment requires that a jury determine only questions of guilt or innocence; punishment is the province of the court"), *cert. denied*, —— U.S. ——, 112 S.Ct. 163, 116 L.Ed.2d 127 (1991). Yet in *Sharp*, the Sixth Circuit assumed that the Sixth Amendment

required just that—i.e, that the attendant deprivations of a felony sentence require that a jury decide any issue that may make the offense a felony. In the context of possession of cocaine base under § 844(a), this erroneous assumption led to the conclusion that the jury had to determine the quantity of the cocaine base possessed for the offense to constitute a felony. However, the Supreme Court's refusal in *Spaziano* to extend the Sixth Amendment right to a jury determination of a capital sentence severely undercuts the Sixth Circuit's conclusion that a defendant has a right to have a jury make *any* determination bearing on whether the offense for which the defendant has been convicted constitutes a felony.

We also note that, under the Sixth Circuit's reasoning, the existence of a prior conviction for possession of a controlled substance would become, under many circumstances, an element of the offense. *Cf. United States v. Forbes*, 16 F.3d 1294, 1299 (1st Cir.1994) (stating that, "under traditional sentencing procedures, proof of a defendant's prior felony convictions typically is . . . considered by the judge, and not the jury"). For instance, even in those § 844(a) offenses other than possession of cocaine base, a prior conviction for possession of a controlled substance can convert what would otherwise be a misdemeanor into a felony. We do not think the Sixth Amendment requires such a result. Nor do we think the Due Process Clause requires it. In *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Supreme Court recognized that increasing the penalty for an offense through the use of a mandatory minimum sentence whenever the sentencing judge found that the defendant "visibly possessed a firearm" during the commission of the offense was permissible. The defendant in that case was not confronted with a "radically different situation" from the usual sentencing proceeding. *Id.* at 89, 106 S.Ct. at 2418; *cf. Specht v. Patterson*, 386 U.S. 605, 608, 87 S.Ct. 1209, 1211, 18 L.Ed.2d 326

(1967). Nor was the defendant faced with a situation in which the government was attempting to avoid the mandate of *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *McMillan*, 477 U.S. at 86, 106 S.Ct. at 2416. Similarly, in this case Congress "simply took one factor that has always been considered by sentencing courts to bear on punishment . . . and dictated the precise weight to be given that factor." *McMillan*, 477 U.S. at 89–90, 106 S.Ct. at 2417–18.

In short, then, we hold that the quantity of cocaine base is not an element of simple possession of cocaine base under § 844(a), even if the quantity of cocaine base renders the offense felonious. We emphasize, like the Second Circuit in *Monk*, that we have no reason in this case to address other issues bearing on whether possession of cocaine base under § 844(a) is a lesser included offense of possession of cocaine base with intent to distribute under § 841(a). For instance, two circuits have held that the identity of the cocaine base (i.e., the fact that the controlled substance is cocaine base) is an element of possession of cocaine base, thus precluding the offense from being a lesser included offense of § 841(a). *See United States v. Deisch*, 20 F.3d 139, 144 (5th Cir. 1994); *United States v. Michael*, 10 F.3d 838, 839 (D.C.Cir.1993). As in *Monk*, however, there was never a dispute in the case before us that the controlled substance at issue was cocaine base, and Mr. Smith does not argue to the contrary on appeal. We also note that, in at least one of the cases holding identity of the cocaine base to be an element of the offense, the court expressly refused to address the issue of whether quantity of the cocaine base is an element of the offense for the jury to determine. *See Michael*, 10 F.3d at 842.[2]

### 2.

■ Mr. Smith next argues that the government failed to present sufficient evidence to support either the § 844(a) possession con-

---

2. We note that Mr. Smith makes no argument that he has been denied the right to indictment by a grand jury, nor could he. He was charged by an indictment that specified both the weight and identity of the controlled substance. *Cf.*

*Deisch*, 20 F.3d at 144–47. Finally, we note that we express no opinion as to whether this conviction ought to be considered a "felony" for the purpose of imposing any collateral disability or future sentence enhancement.

viction or the § 843(b) communications conviction.

His challenge to the § 844(a) conviction focuses on whether the government proved beyond a reasonable doubt that he knowingly and intentionally possessed a controlled substance, namely cocaine base.[3] Mr. Smith argues that his § 844(a) conviction is almost identical to the § 841(a) conviction the Fourth Circuit reversed for insufficient evidence in *United States v. Samad,* 754 F.2d 1091 (4th Cir.1984). In that case, as in Mr. Smith's, drug enforcement authorities intercepted a parcel of narcotics with the defendant's address on it and then arranged for a controlled delivery of the parcel to the defendant's address. The postal carrier who delivered the package asked the defendant, who had answered the door, for "M. Amin," the fictitious addressee on the package. The defendant simply replied "yes," at which point the postal carrier handed him the package. *Id.* at 1094. The Fourth Circuit reversed the defendant's § 841(a) conviction because "a fact-finder could not rationally find beyond a reasonable doubt ... that Samad, in accepting the package, knowingly represented himself to be the fictitious addressee 'M. Amin.'" *Id.* at 1097.

■ In *Samad,* the defendant "had been in the country for just over a year at the time of his arrest and ... his command of the English language was marginal at best." *Id.* The Fourth Circuit appeared to rely heavily on that fact: "We do not believe that it is reasonable to infer beyond a reasonable doubt that Samad, an Afghan who had to speak through an interpreter, purposely misrepresented his identity by replying 'Yes' to a mailman who had thrust a package in his direction...." *Id.* at 1097–98. Here Mr. Smith, without any language disability, indicated verbally to the undercover agent that he was Troy Coleman and signed for the package of cocaine crack as "Troy Cole-

man."[4] To be sure, Mr. Smith provided the jury with an innocent reason to explain why he signed for the package in a fictitious name. The jury, however, chose not to believe Mr. Smith, and it is not for us to second guess its disbelief in a sufficiency challenge. *See United States v. Binkley,* 903 F.2d 1130, 1135 (7th Cir.1990) (stating that in a sufficiency challenge "the fact that there was an 'innocent' explanation" is "irrelevant"). We also note that, in his statement to the authorities, Mr. Smith admitted that, at the time the agents entered his home, he attempted to flee.[5] Evidence of flight is probative of consciousness of guilt. *United States v. Jackson,* 886 F.2d 838, 846 (7th Cir.1989). We thus conclude that Mr. Smith's clear acceptance of the package in a fictitious name, together with his admission that he "felt that cocaine was being delivered," Tr. 358–59, was enough for a rational jury to convict him of simple possession under § 844(a). *Accord United States v. Fortenberry,* 973 F.2d 661 (8th Cir.1992) (rejecting sufficiency challenge to § 841(a) conviction where the defendant exclaimed "That's for me" to the approaching postal carrier and later admitted to authorities that he knew the package contained cocaine but accepted it for a friend).

■ Mr. Smith also argues that there was insufficient evidence supporting his § 843(b) communications conviction. He submits that the government failed to present sufficient evidence demonstrating that Federal Express is a "communication facility" within the meaning of the statute. We cannot accept Mr. Smith's contention. Section 843(b) makes it unlawful to use a "communication facility" in committing a felony under the federal narcotics laws. The statute states that a communication facility "means any and all public and private instrumentalities used or useful in the transmission of writing ... and includes mail, telephone, wire, radio, and

---

3. The defendant apparently did not raise this issue in his motion for judgment of acquittal. *See* R. 66, 77. However, the government has not raised that waiver in this court.

4. We note that, in *Samad,* as the letter carrier turned to walk away, Samad asked him if he needed to sign for the package. The letter carri-

er responded in the negative. *Samad,* 754 F.2d at 1094.

5. Mr. Smith asserted in his statement: "Then there was a big bang by the front door. The police came into my house and the police arrested me. I tried to go to the front window but the police subdued me." Tr. 358.

all other means of communication." There are many instances in the record where it was demonstrated beyond any reasonable doubt that Federal Express falls under the statutory definition, not the least among which is a Federal Express investigator's detailed discussion of the company's role in this case and other types of criminal cases. *See* Tr. 305–11. We therefore conclude that sufficient evidence existed to support Mr. Smith's § 843(b) conviction.

■ Mr. Smith further contends that, because his § 844(a) conviction should not have been deemed a felony, his conviction under § 843(b), which he argues requires a predicate felony conviction, is an inconsistent verdict violative of his due process rights. He claims that this result is dictated by *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). *Powell,* however, does not support Mr. Smith's argument. In fact, in holding that even an acquittal on an underlying narcotics charge does not require that a § 843(b) conviction be reversed, *Powell* precludes such an argument. *See United States v. Scop,* 940 F.2d 1004, 1007 (7th Cir.1991) (stating that *Powell* "held that a defendant's conviction for using the telephone to facilitate a felony, in violation of 21 U.S.C. § 843(b), could not be reversed even if the defendant had been acquitted by the jury of the underlying felony"); *United States v. Grier,* 866 F.2d 908, 929 (7th Cir. 1989) (same); *see also Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) (Holmes, J.) ("Consistency in the verdict is not necessary. Each count in the indictment is regarded as if it was a separate indictment.").

### 3.

■ Mr. Smith's final contention is that the district court erred in not granting his motion for severance. He claims that his attempt to have telephone records admitted into evidence showing that Mr. German was on the phone to the Los Angeles area at the time the package arrived was thwarted by Mr. German's refusal to abide by an alleged

oral stipulation that the records would not be objected to on hearsay grounds. As a result, Mr. Smith was unable to put the records into the evidence because he did not have the phone company records custodian present at trial. Mr. Smith thus contends that he suffered prejudice as the result of the joint trial because, under *Zafiro v. United States,* —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993), the records constituted "essential exculpatory evidence that would [have] be[en] available to a defendant tried alone."

The joint trial was plainly not the reason the telephone records were never admitted into evidence. Rather, the records were not admitted because Mr. Smith failed to obtain a binding stipulation as to their admissibility, or to secure an alternative method of establishing their admissibility. Moreover, the records were hardly the type of exculpatory evidence with which *Zafiro* was concerned; the records' exclusion in no way "prevent[ed] the jury· from making a reliable judgment about guilt or innocence." *Id.* We therefore conclude that the district court did not err in denying Mr. Smith's severance motion on this basis, much less abuse its discretion. *See id.* at ——, 113 S.Ct. at 939 (stating that abuse of discretion is the standard of review for a district court's denial of a severance motion); *United States v. Hamilton,* 19 F.3d 350, 358 (1994) (same), *petition for cert. filed* (U.S. June 20, 1994) (No. 93–9698).

### B. *Kwabene German*

In his appeal, Mr. German also makes three arguments. First, he submits that the government failed to present sufficient evidence to support either his conviction for possession of cocaine base with intent to distribute under § 841(a) or his conviction for conspiring to do so under § 846.[6] Second, Mr. German argues that the district court erred in denying his motion for severance. Finally, Mr. German contends that the severity of his sentence amounts to cruel and unusual punishment. We address each argument in turn.

---

**6.** Mr. German also argues that the government failed to prove that Federal Express was a "communication facility" under § 843(a). We have,

however, already concluded to the contrary. *See supra* part II.A.2.

### 1.

■ Mr. German's first contention is that the government did not present enough evidence to support either his § 841(a) possession with intent to distribute conviction or his § 846 conspiracy conviction. Although he concedes that circumstantial evidence alone can support a conspiracy conviction, he submits that there simply was not enough evidence—circumstantial or otherwise—to demonstrate that he had an agreement with anyone to distribute cocaine base as part of a criminal enterprise. Mr. German submits that the evidence shows only that he purchased the crack cocaine from a person or persons in the Los Angeles area. In reply, the government states that, although the jury did not accept its argument of a conspiratorial agreement between Mr. German and his codefendant Mr. Smith, it did present enough circumstantial evidence to demonstrate a conspiracy between Mr. German and persons "unknown," as is acceptable under *United States v. Byerley*, 999 F.2d 231, 234 (7th Cir.1993). The conspiracy is evidenced, so the government maintained at oral argument, by the large quantity of cocaine base (nearly a kilogram) Mr. German received, by the phone calls made to Los Angeles, and by Mr. German's flight from the house with the cocaine base.

■ Even viewing the evidence in the light most favorable to the government, as we must in a sufficiency challenge, we cannot agree with the government that the evidence in this case demonstrates that Mr. German conspired with an unknown person or persons in the Los Angeles area to distribute cocaine base. "The essential elements of conspiracy under section 846 are the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substance Act." *United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir.1982). In the context of drug transactions, however, "the mere purchase or sale of narcotics is not sufficient evidence to prove that an individual joined a drug conspiracy." *United States v. Dortch*, 5 F.3d 1056, 1065 (7th Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994); *see also Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir.1994) (same); *United States v. Kimmons*, 917 F.2d 1011, 1015 (7th Cir.1990) (same). "A buy-sell transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction." *United States v. Townsend*, 924 F.2d 1385, 1394 (7th Cir.1991). In this case, the evidence the government adduced at trial demonstrates nothing more than a single purchase. The government's attempt to show otherwise by pointing to the large quantity of cocaine base involved does not salvage its case; we have stated on previous occasions that "large quantities of controlled substances, without more, cannot sustain a conspiracy conviction." *United States v. Lamon*, 930 F.2d 1183, 1191 n. 18 (7th Cir.1991); *see also United States v. Baker*, 905 F.2d 1100, 1106 (7th Cir.), *cert. denied*, 498 U.S. 876, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990). In short, nothing in the record establishes that Mr. German had any more contact with the person in Los Angeles who shipped the cocaine base than this one transaction. *See Baker*, 905 F.2d at 1106. One can hypothesize to the contrary, but a criminal conviction must be based on facts, not on conjecture. *See United States v. Sullivan*, 903 F.2d 1093, 1099 (7th Cir.1990).

■ Our conclusion that the evidence does not support the conspiracy conviction, of course, in no way means that the same evidence does not support the conviction for possession with intent to distribute. Unlike a conspiracy under § 846, a conviction for possession with intent to distribute under § 841(a) can be supported by "the possession of a quantity of drugs larger than needed for personal use." *United States v. Maholias*, 985 F.2d 869, 879 (7th Cir.1993); *see also United States v. Tanner*, 941 F.2d 574, 586 (7th Cir.1991) ("Proof of possession of substantial amounts of narcotics supports an inference that the possessor intended to distribute the drugs rather than to retain them for personal use."), *cert. denied*, — U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992). Thus, Mr. German's possession of almost a kilogram of cocaine, as well as his flight from the authorities with it, is enough evidence to

allow a reasonable jury to convict him of possession with intent to distribute. *See Lamon*, 930 F.2d at 1192 (concluding that evidence that was insufficient to support conviction for conspiracy was nonetheless sufficient to support conviction for possession with intent to distribute); *Baker*, 905 F.2d at 1105 (same); *Sullivan*, 903 F.2d at 1099 (same).

### 2.

Mr. German's next argument concerns the district court's denial of his severance motion. At the joint trial, Mr. German's codefendant, Mr. Smith, took the stand and testified that the Federal Express package containing the crack cocaine belonged to Mr. German. Mr. Smith stated that Mr. German had asked him on the day of the events at issue if he minded having "a package" delivered at his house. Tr. 613–14. Mr. German objected to this testimony on hearsay grounds; in response, the district court admonished the jury not to consider Mr. Smith's statements for the truth of the matter asserted, but only for the motives underlying Mr. Smith's actions. Mr. German now argues that the admission of this testimony, even with a limiting instruction, mandated severance. Mr. German states that, under *Zafiro v. United States*, —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), severance should be granted

> if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant.

*Id.* at ——, 113 S.Ct. at 938. According to Mr. German, the testimony of his codefendant, Mr. Smith, constituted just such evidence. If the district court had granted severance, Mr. German asserts that Mr. Smith's testimony would have been inadmissible at his separate trial, thereby depriving the government of critical evidence against him. Thus, although Mr. German concedes that he bears an extremely difficult burden in seeking reversal based on severance, he submits that the district court abused its discretion in not granting his severance motion. *See United States v. Hamilton*, 19 F.3d 350, 358 (7th Cir.1994) (setting forth standard of review); *United States v. Briscoe*, 896 F.2d 1476, 1516 (7th Cir.) (noting heavy burden associated with severance argument), *cert. denied*, 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990).

We cannot accept Mr. German's argument. Mr. German argues that severance was mandated under *Zafiro* because evidence that should not have been considered against him and would not have been admissible in a separate trial was admitted against him in the joint trial; he is wrong on both counts. First, owing to his objection to Mr. Smith's testimony, the district court instructed the jury not to consider the testimony at issue for the truth of the matter asserted. Thus, the evidence was not considered against him. Yet, even if we assume *arguendo* that it was, there was no error because Mr. German's own statements were not hearsay as against him. Second, Mr. German never explains why Mr. Smith's testimony would not have been admissible against him in a separate trial; he states that it would have been inadmissible only in conclusory fashion. The absence of a fuller explanation is likely because there is none. Not only would Mr. Smith have been able to testify at Mr. German's separate trial, but the testimony he gave would not have been emasculated by a limiting instruction like the one Mr. German received at his joint trial. Furthermore, Mr. Smith's testimony would arguably have been more effective because the jury might not have viewed Mr. Smith as simply trying to make himself look good at the expense of Mr. German. As *Zafiro* states, a "defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant." *Zafiro*, —— U.S. at ——, 113 S.Ct. at 938. We therefore conclude that the district court did not abuse its discretion in denying Mr. German's severance motion.

### 3.

Finally, Mr. German contends that the severity of his sentence, stemming from the enhanced penalties in the Sentencing Guidelines for offenses involving cocaine base, amounts to cruel and unusual punishment in violation of the Eighth Amendment. He argues, without citation to any authority, that "[n]o cogent reason" exists for the Guidelines' disparate treatment of cocaine and cocaine base. We have addressed the identical argument made under the due process and equal protection clauses:

> We ... hold[ ] that Congress' enactment of different penalties for cocaine base and cocaine evinces a rational purpose and does not violate the due process clause.... The highly addictive nature of crack, its growing availability, and [its] relatively low cost all serve to increase the risks associated with its use. Congress ... has chosen to combat the devastating effects of crack cocaine on our society, and we believe the disproportionate sentencing scheme that treats one gram of cocaine base the same as 100 grams of cocaine is rationally related to this purpose.

*United States v. Lawrence,* 951 F.2d 751, 755 (7th Cir.1991) (citation omitted); *see also United States v. Chandler,* 996 F.2d 917, 918–19 (7th Cir.1993) (per curiam) (same). This same explanation affords a solid basis for rejecting an Eighth Amendment argument.

### Conclusion

For the foregoing reasons, Mr. Smith's § 844(a) conviction and his § 843(b) conviction are affirmed. Mr. German's § 841(a) conviction and his § 843(b) conviction are affirmed; his § 846 conspiracy conviction is reversed. As is the practice in this circuit, we vacate Mr. German's sentence and remand his case to the district court for resentencing consistent with this opinion. *See United States v. Lowry,* 971 F.2d 55, 66 (7th Cir.1992) ("In order to allow the district court to reconsider its plan as a whole in sentencing [the defendant], we remand for resentencing on all counts."); *see also United States v. Chaplin,* 25 F.3d 1373, 1382 (7th Cir.1994) (same).

AFFIRMED in part, REVERSED in part and REMANDED.