**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Tiffany M. BILLOPS and James A. Morning, Defendants–Appellants.**

Nos. 94–2035, 94–2303.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1994.

Decided Dec. 16, 1994.

**2.** The 1992 Cable Act, which amended the Cable Communications Policy Act of 1984, did not affect the preemption provision.

to distribute cocaine base (21 U.S.C. §§ 846 and 841(a)) and of possession of cocaine base (a lesser included offense of 21 U.S.C. § 844(a), possession with intent to distribute cocaine base). She was sentenced to concurrent terms of 262 months and 240 months on the two counts. Ancillary penalties were also imposed on each defendant. Before this court, both appellants submit that the evidence is insufficient to support the judgment of conviction. They also raise several issues with respect to their sentences. For the reasons set forth in the following opinion, we affirm the judgments of the district court.

I

BACKGROUND

The charges in this case were the product of an investigation conducted by the Sheriff's Department of St. Claire County, Illinois. The investigation involved drug activities at 52 Laura Lee Drive. Law enforcement officers made four controlled purchases of crack cocaine in one week at that residence. Based on those purchases, the Department obtained a state search warrant for the premises of that house.

On January 12, 1994, the Sheriff's Department used a confidential informant to make one more controlled purchase of crack cocaine from that address. It then executed the search warrant. The officers found the defendants in the southwest bedroom. Co-defendant Shawn Binford was in another room of the house.[1] The search uncovered six firearms and 10.4 grams of cocaine base. The officers also found a pager, a police scanner, money, and rocks of crack cocaine scattered over the floor of the bedroom.

Mr. Morning and Ms. Billops were arrested, taken to the Sheriff's Department, advised of their *Miranda* rights and interviewed. Each signed a written statement. In his statement, Mr. Morning admitted that he had sold 50 half-ounces of crack cocaine from the Laura Lee residence between June 1993 and the date of his arrest. He also

Ranley R. Killian, Jr. (argued) and Randy G. Massey, Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

Howard B. Levy (argued), Chicago, IL and Andrea L. Smith (argued), Office of the Federal Public Defender, East St. Louis, IL, for defendants-appellants.

Before GOODWIN,* RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

In this consolidated appeal, James A. Morning and Tiffany M. Billops appeal their conviction for drug trafficking offenses. Mr. Morning stands convicted of conspiracy to possess with intent to distribute cocaine base (21 U.S.C. §§ 841(a)(1) and 846); possession with intent to distribute cocaine base (21 U.S.C. § 841(a)(1)); and use of a firearm during a drug trafficking offense (18 U.S.C. § 924(c)). The district court imposed a sentence totalling 324 months. Ms. Billops was convicted of conspiracy to possess with intent

* The Honorable Alfred T. Goodwin of the United States Court of Appeals for the Ninth Circuit is sitting by designation.

1. Mr. Binford entered a plea of guilty on February 28, 1994. He is not a party to this appeal.

stated that he kept a handgun for protection during his drug business. Ms. Billops also signed a written statement. She admitted that she lived at 52 Laura Lee, that she had sold crack cocaine from there at least 100 times between April or May 1993 and the time of her arrest, and that she possessed a handgun for protection. Ms. Billops indicated that co-defendant Shawn Binford and others also sold crack cocaine from the residence.

A three-count indictment charged Billops, Morning, and Binford with conspiracy to distribute cocaine base, possession with intent to distribute cocaine base, and the use of a firearm during a drug trafficking offense. The jury found Mr. Morning guilty of all three counts; it found Ms. Billops guilty of Count 1 (conspiracy) and guilty of the lesser included charge of possession of cocaine base on Count 2. It found her not guilty on Count 3 (using or carrying a weapon in relation to a drug trafficking crime transaction).

At sentencing, the district court determined that Mr. Morning's total offense level was 38 and that he had a criminal history category of II. The district court then sentenced him to 264 months of imprisonment on each of Counts 1 and 2, to be served concurrently, and a consecutive term of 60 months on Count 3, for a total term of 324 months. Ms. Billops' offense level was 38 and the criminal history category II. She was sentenced to a term of 262 months in prison on Count 1 and a concurrent term of 240 months on Count 2.

## II

### DISCUSSION

We shall address the contentions of each defendant with respect to the sufficiency of the evidence. We shall then address, with respect to each, sentencing matters.

#### A. *Sufficiency of Evidence*

We turn first to the contentions that the record will not support the convictions of the defendants. As we have repeatedly noted, the defendant who seeks to upset a jury verdict on this ground must overcome a very high hurdle. The applicable standard is well settled. Our inquiry, when reviewing a challenge to the sufficiency of the evidence presented to support a criminal conviction, is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Howell,* 37 F.3d 1197, 1201 (7th Cir.1994); *United States v. Garcia,* 35 F.3d 1125, 1128 (7th Cir.1994).

In evaluating contentions with respect to the sufficiency of the evidence, we examine the evidence of record in light of the elements of each offense. The conviction based on that evidence may be reversed "[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Rosalez–Cortez,* 19 F.3d 1210, 1215 (7th Cir.1994) (quoting *United States v. Teague,* 956 F.2d 1427, 1433 (7th Cir.1992)).

### 1.

We turn first to the conspiracy convictions. With respect to this charge, the government had to prove an agreement between two or more persons to possess with intent to distribute cocaine base, the defendants' knowledge of the agreement, and their intention to join it. *United States v. Williams,* 31 F.3d 522, 525 (7th Cir.1994); *United States v. Salazar,* 983 F.2d 778, 781 (7th Cir.1993). We also note that the Supreme Court recently held that, in establishing a violation of the criminal conspiracy statute, 21 U.S.C. § 846, "the Government need not prove the commission of any overt acts in furtherance of the conspiracy." *United States v. Shabani,* — U.S. —, —, 115 S.Ct. 382, 385, 130 L.Ed.2d 225 (U.S. 1994). "In determining whether a defendant was a party to the conspiracy at issue, this Court has considered the existence of mutual dependence or mutual support among the defendant and members of the conspiracy as evidence suggesting that defendant did, in fact, join the conspiracy." *United States v. Testa,* 33 F.3d 747, 750 (7th Cir.1994) (citing *United States v. Townsend,* 924 F.2d 1385,

1392 (7th Cir.1991)). "An agreement to conspire is 'typically distinguished by cooperative relationships between the parties that facilitate the achievement of the goal.'" *Rosalez–Cortez*, 19 F.3d at 1215 (quoting *Townsend*, 924 F.2d at 1395). Proof of that agreement may, of course, be grounded in circumstantial as well as direct evidence.[2]

■ We cannot accept Mr. Morning's submission that the government has failed to carry its burden in this regard. In addition to Mr. Morning's own written admission that he sold crack cocaine fronted by others, the government presented evidence of the five controlled purchases made from Mr. Morning's residence in one week; the currency used to purchase the crack cocaine on prior occasions; a quantity of cocaine base from the bedroom Mr. Morning and Ms. Billops shared and a police scanner and a pager found in the house. A jury clearly could have found the essential elements of conspiracy beyond a reasonable doubt. Ms. Billops' contention that she cannot be convicted of conspiracy because she was acquitted of the offense of possession with intent to distribute cocaine also must fail. To the extent that her submission rests on the proposition that the jury verdicts are inconsistent, two considerations defeat her claim. First, it is well established that consistency in verdicts is not required because each count in the indictment must be treated for these purposes as a separate count in the indictment.[3] Secondly, and more basically, there is no inconsistency here. The jury decided that the government had not proven that her possession of cocaine

base on a given day (on or about January 12, 1994) included the intent to distribute. That determination does not preclude the possibility that she conspired over a longer period of time to distribute the contraband.

### 2.

■ Mr. Morning also argues that there was no proof that he possessed cocaine with the intent to distribute it. He admits that there was enough crack cocaine found in the house to prove constructive possession, but contends that intent to distribute may be inferred only when the amount of drugs is more than that needed for personal use. *United States v. Maholias*, 985 F.2d 869, 879 (7th Cir.1993). The evidence showed that 10.4 grams of crack cocaine were seized from the residence on January 12, 1994. Up to three times that amount, he contends, could be consistent with personal use amount. *See United States v. Kimmons*, 917 F.2d 1011, 1016 (7th Cir.1990) (determining that government did not prove defendant's intent to distribute cocaine through its witness, a drug enforcement agent, who testified that thirty grams could be consistent with either distribution or personal use). Thus, he contends, the government failed to prove that he intended to distribute crack.

We note at the outset that there was unrebutted testimony at trial that the amount of cocaine base seized during the search was a quantity greater than the user amount.[4] Moreover, while the quantity of drugs can be the basis of proving an intent to distribute,[5]

---

**2.** *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) ("Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'" (citation omitted)); *United States v. Ferguson,* 35 F.3d 327, 331 (7th Cir.1994) (stating that "the government must demonstrate by substantial evidence, which may be entirely circumstantial, that a conspiracy existed and that the defendant knowingly agreed to join it").

**3.** In *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932), Justice Holmes stated: "Consistency in the verdict is not necessary. Each count in the indictment is regarded as if it was a separate indictment." *See United States v. Powell,* 469 U.S. 57, 69, 105 S.Ct.

471, 479, 83 L.Ed.2d 461 (1984); *United States v. Smith,* 34 F.3d 514, 522 (7th Cir.1994) (quoting *Dunn* ); *United States v. Walker,* 9 F.3d 1245, 1248 (7th Cir.1993), *cert. denied,* ⸺ U.S. ⸺, 114 S.Ct. 1863, 128 L.Ed.2d 485 (1994).

**4.** Deputy Sheriff Kelly Oliver, qualified as an investigator of drug activities, testified that 10 grams or more of cocaine was not a user amount, and that the average dose was "a single rock or at least less than a gram." (Tr. at I–66, 67.) This statement was not challenged on cross-examination by either defense attorney.

**5.** "A conviction for possession with intent to distribute under § 841(a) can be supported by 'the possession of a quantity of drugs larger than needed for personal use.'" *United States v. Smith,* 34 F.3d 514, 523 (7th Cir.1994) (quoting

it is not the only basis upon which the government may establish such a charge. Indeed, the jury was entitled to rest its determination on the circumstantial evidence that we have just described with respect to the conspiracy charge. Moreover, in addition to the fact that drug sales had previously been made from Mr. Morning's residence and that Mr. Morning was in possession of currency which had been used to purchase those drugs, Mr. Morning also admitted in his written statement that he was in fact a drug dealer. In detail, he named people who fronted crack cocaine to him and stated that he sold it from his residence. He admitted that he kept a gun close by when selling the contraband.

### 3.

■ We also believe that the record sustains the conviction of Mr. Morning for carrying a firearm in relation to a drug offense. Using a weapon includes possession of that weapon in any way that facilitates the commission of the underlying offense. *United States v. Ocampo*, 890 F.2d 1363, 1371 (7th Cir.1989). Dealers who keep guns in strategic proximity to their drugs or transactions "use them in relation to" their drug trafficking for purposes of the statute. *United States v. Woods*, 995 F.2d 713, 718 (7th Cir. 1993).

Deputy Sheriff Kelly Oliver testified that, when Mr. Morning was interviewed, he admitted that he kept a handgun "for protection during his drug business and kept it in close while he was selling." (Tr. at I–61.)

Mr. Morning's signed statement specifically identified the weapon he kept on his headboard as a .380 automatic handgun. (Government Ex. 30 at 2.) In this case, five weapons were found in different locations in the bedroom where a quantity of crack cocaine and currency previously used to buy the crack cocaine were found.

### B. *Sentencing Matters*

1. Mr. Morning's leadership role: U.S.S.G. § 3B1.1(c)

■ Mr. Morning argues that the two-level increase in his sentence under § 3B1.1(c) of the 1993 Sentencing Guidelines on account of his leadership role was not warranted because there was no proof that he controlled or organized the drug sales from his home.[6] He claims that there was joint control or responsibility over drug sales from the residence. In his view, Ms. Billops' statement to the police indicates that she was as responsible and had as much control over the drug activities as he did. *See United States v. Katora*, 981 F.2d 1398, 1405 (3d Cir.1992) (concluding that § 3B1.1 did not apply because the only two participants were equally culpable and did not lead a third participant). He also argues that co-conspirator Shawn Binford's statement indicates joint control and responsibility. Mr. Morning characterizes the selling arrangement out of the residence as a loose confederation of people selling from the residence. He states that he did not recruit accomplices and did not claim a right to the fruits of the drug sales by other people in the house; rather, he passively consented to the use of his

---

*Maholias*, 985 F.2d at 879). In *Smith*, the defendant's possession of almost a kilo of cocaine was found to be sufficient for conviction. Other cases that have found a quantity sufficient to support the inference of an intent to distribute include *United States v. Saunders*, 973 F.2d 1354, 1360 (7th Cir.1992) (thirteen ounces of packaged cocaine), *cert. denied*, — U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993), and *United States v. Garrett*, 903 F.2d 1105, 1113 (7th Cir.) (3.5 grams packaged cocaine), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). In *United States v. Mancari*, 875 F.2d 103, 105 (7th Cir.1989), *cert. denied*, 499 U.S. 924, 111 S.Ct. 1320, 113 L.Ed.2d 253 (1991), in contrast, a small-quantity purchase of a quarter-ounce of cocaine was not sufficiently large to indicate purchase for resale.

6. Section 3B1.1 adjusts the offense level based upon the aggravating role the defendant played in committing the offense. It provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

house as a drug distribution point, and allowed others to sell his and Ms. Billops' drugs while they were gone.

The determination of whether Mr. Morning exercised a leadership role is a factual determination that we review under the clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Bell*, 28 F.3d 615, 617 (7th Cir.1994); *United States v. Skinner*, 986 F.2d 1091, 1095 (7th Cir.1993). The district court saw the evidence and both heard and observed the witnesses called to testify at trial. On the basis of that evidence, it found that Mr. Morning occupied a leadership role in the conspiracy. It based this determination on the fact that the drug sales occurred from Mr. Morning's residence and that he was responsible for obtaining the drugs from the source, as well as on the fact that he directed some of the sales. These are all appropriate factors for the court to consider.

Notably, the court sustained the defendant's objections to the 4–level enhancement of § 3B1.1(a), even though there may have been five people involved in the conspiracy. It accepted the defense counsel's argument that a two-level enhancement was "a more appropriate designation here." (Tr. at 8.) It enhanced the offense level by only two levels under § 3B1.1(c) on the ground that "the evidence clearly shows that the defendant was an organizer or leader in this activity that was conducted out of this home, and he got the drugs from the supplier and the source and directed some of the sales." (Tr., May 18, 1994 Disposition at 8–9.) Mr. Morning's counsel had conceded that "there was some facilitation going on here" that "gives rise to some leadership points." *Id.* at 7; *see* U.S.S.G. § 3B1.1, comment n. 4;[7] *United*

States v. Loscalzo, 18 F.3d 374, 387 (7th Cir.1994) (reviewing evidence in light of those factors listed in application note 4).

Mr. Morning's reliance on *United States v. Katora*, 981 F.2d 1398 (3d Cir.1992) is misplaced. In that case, there were only two equally culpable participants in the scheme. In this case there are other co-defendants who were also prosecuted or identified. Even assuming that Mr. Morning and Ms. Billops were equally culpable, a leadership role is not limited to one person per organization. *See* Guideline § 3B1.1, comment n. 4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."); *United States v. Boula*, 997 F.2d 263, 265 (7th Cir.1993) (stating that offense level of both defendants was raised four points under § 3B1.1(a) because both were organizers of the criminal activity). There was no clear error in the district court's assigning a leadership role to Mr. Morning.

2. Mr. Morning: Increase based on prior conviction

Mr. Morning asserts that his prior conviction should not be used to enhance his sentence because that conviction was constitutionally flawed: He was denied effective assistance of counsel. He bases this claim of ineffectiveness on the ground that the attorney who represented him when he pled guilty in Illinois state court proceedings also represented Ms. Billops, his codefendant.

Mr. Morning had entered a plea of guilty in state court on March 18, 1983. It appears that no direct appeal was taken. *See* Ill.Sup. Ct.Rule 604(d).[8] Prior to trial in this case, the government filed an Information stating that it would seek an increase in Mr. Morning's potential statutory penalties based on

---

**7.** Application note 4 of the commentary to § 3B1.1 states:

In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority

exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

**8.** Supreme Court Rule 604(d), in pertinent part, provides:

(d) Appeal by Defendant From a Judgment Entered Upon a Plea of Guilty. No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed,

the prior state court drug felony conviction. After Mr. Morning was convicted of the federal charges on February 26, 1994, he filed a motion to withdraw his guilty plea in state court.[9] The state court denied that motion. The record is silent with respect to the basis for the denial. Mr. Morning then filed an appeal from the denial of that motion. That appeal was pending at the time of sentencing. At Mr. Morning's request, the district court conducted a hearing to determine whether Mr. Morning's state conviction should be considered in imposing sentence. On the authority of *United States v. Mitchell,* 18 F.3d 1355, 1358 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 640, 130 L.Ed.2d 546 (1994), the district court determined that the conviction would be considered.

The district court correctly applied our decision in *Mitchell,* now confirmed by the Supreme Court's decision in *Custis v. United States,* —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). *See United States v. Killion,* 30 F.3d 844, 846 (7th Cir.1994) (discussing relationship between *Mitchell* and *Custis.*) Federal sentencing hearings are not the proper forum for addressing the validity of prior convictions. A collateral attack is permitted only when the prior conviction is "presumptively void," that is, "plainly detectable from a facial examination of the record." *Mitchell,* 18 F.3d at 1360–61. Claims of ineffective assistance of counsel do not present such a facial invalidity. *Custis,* —— U.S. at ——, 114 S.Ct. at 1738.

3. Ms. Billops: Enhancement for possession of firearm U.S.S.G. § 2D1.1(b)(1)

■ Ms. Billops submits that, because she was acquitted on the charge of using or carrying a firearm, the district court should not have enhanced her base offense level by two points for possession of a firearm while committing a drug offense.[10] She claims that the enhancement added at least 52 months to her sentence for a charge on which she won

acquittal before the jury. In her view, this result is a perversion of our system of justice and a violation of her constitutional protection from double jeopardy.

Ms. Billops correctly states that she was acquitted of Count 3, which alleged that, on January 12, 1994, she committed the offense of using or carrying a firearm during and in relation to a drug trafficking crime. However, it is settled that a district court may properly enhance a defendant's sentence for possession of a firearm, even though the jury acquitted him of a violation of 18 U.S.C. § 924(c), using or carrying a firearm in relation to a drug trafficking crime. *United States v. Chandler,* 12 F.3d 1427, 1434–35 (7th Cir.1994); *United States v. Ewing,* 979 F.2d 1234, 1237 (7th Cir.1992). Nothing in the Guidelines or the Constitution prevents the court from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct. *United States v. Welch,* 945 F.2d 1378, 1385 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992). More fundamentally, it is important to note that Ms. Billops admitted to the police that she possessed a .25 caliber handgun and that she was convicted of participating in a conspiracy to distribute cocaine that lasted for a far greater period of time than the one day on which she was charged with a violation of 21 U.S.C. § 924(c). The district court could have easily concluded on this record that Ms. Billops possessed the firearm during her activities in furtherance of the conspiracy.

4. Ms. Billops: Amount of cocaine base attributable to Ms. Billops' relevant offense conduct

■ The district court found that, for purposes of sentencing, the amount of cocaine base attributable to Ms. Billops for her relevant conduct was between 500 grams and 1.5 kilograms. To the 10.4 grams found in

---

files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw his plea of guilty and vacate the judgment.

9. There is some authority in Illinois for considering an untimely motion to withdraw a plea as a petition for post-conviction relief under the Post–Conviction Hearing Act, 725 ILCS 5/122–1

through 122–8 (West 1992). *See People v. Jett,* 211 Ill.App.3d 92, 155 Ill.Dec. 541, 542, 569 N.E.2d 1152, 1153 (1991).

10. The pertinent provision of the 1993 Guidelines states:

§ 2D1.1(b) Specific Offense Characteristics
(1) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

Ms. Billops' residence the court added the 50 half-ounces of cocaine base that Mr. Morning admitted selling and 50 half-ounces of cocaine base that Mr. Morning admitted distributing. Relying on our holding in *United States v. DePriest*, 6 F.3d 1201, 1213 (7th Cir.1993), Ms. Billops maintains that the district court must make an explicit finding as to the drug quantity attributable to the defendant. It must also state the reasons why the defendant was aware of or reasonably could have foreseen the sale by a co-defendant, and must make clear that it considered the evidence of the defendant's agreement to join the conspiracy. In this case, argues Ms. Billops, the district court failed to state why the amounts sold and distributed by Mr. Morning were reasonably foreseeable to Ms. Billops. She further submits that it also failed to state whether Ms. Billops was aware of the sale and distribution of these amounts by Mr. Morning, and whether she had agreed to join the conspiracy for the sale and distribution of those amounts. Ms. Billops maintains that these infirmities require that she be resentenced.

█ The determination of the amount of drugs attributable to the defendant and therefore constituting the relevant offense conduct for purposes of sentencing is a finding of fact which must be reviewed under the clearly erroneous standard. *United States v. Herrera*, 948 F.2d 1046, 1048 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992). We have made it clear on several occasions that sentencing courts are expected to make explicit findings as to drug quantities. *See United States v. Young*, 34 F.3d 500, 505–06 (7th Cir.1994) *(Young II); DePriest*, 6 F.3d at 1213; *United States v. Young*, 997 F.2d 1204, 1211 (7th Cir.1993) *(Young I)*. Indeed, we have suggested that the district courts adopt the practice of setting forth these findings in a sentencing memorandum in order to avoid needless misinterpretation by this court on appellate review. *See Young I*, 997 F.2d at 1211; *United States v. Edwards*, 945 F.2d 1387, 1399 n. 2 (7th Cir.1991), *cert. denied*, —— U.S. —— 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992). Our principal concern here is the one that we noted in *DePriest:*

In making such a determination, the sentencing court "should state reasons why

each individual defendant was aware of or reasonably foresaw the particular amount of drugs for which he will be held accountable, with references to supporting evidence."

6 F.3d at 1213 (citing *United States v. Goines*, 988 F.2d 750, 775 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993)). We are aware that requiring such detailed specificity places a significant burden on the conscientious district court that desires to convey to the defendant at sentencing a sense of the solemnity of the occasion. It no doubt will take time and experience for even the most skilled trial judge to harmonize the need for that solemnity with the demands of the congressionally-mandated guidelines for precision.

Our task on appeal, however, is, in the final analysis, to determine whether the procedures employed by the district court produce substantial prejudice to the defendant and therefore warrant reversal. We have examined with care the transcript of the sentencing proceedings in this case and must conclude that the district court's determinations amount to substantial compliance with our earlier cases. While a more explicit statement as to why the amounts of contraband attributed to Mr. Morning ought to be attributed also to Ms. Billops would have been preferable, we cannot say that the district court committed reversible error. Indeed, we note that trial defense counsel admitted at the disposition hearing that the court's findings as to quantities were not unreasonable. This admission could possibly be construed as a waiver of this issue on appeal. *See, e.g., United States v. Livingston*, 936 F.2d 333, 335–36 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 787 (1992). Counsel's candor is certainly supported by the record. The district court heard evidence that Mr. Morning and Ms. Billops lived together and sold drugs together. Indeed, they admitted engaging in drug trafficking together. The court specifically referred to the fact that Ms. Billops admitted selling crack cocaine from the residence at least 100 times, and that Mr. Morning and Ms. Billops admitted trafficking in cocaine base over an extended period of time. The court referred to the quantity that Mr.

Morning admitted was sold from the residence during the time of the conspiracy. At no time did Ms. Billops suggest that she played a lesser role in the operation. On the basis of our study of the record, we must conclude that these findings were sufficiently specific to constitute substantial compliance with the mandates of our caselaw. We cannot say therefore that the district court's determination concerning quantity of drugs attributable to Ms. Billops is clearly erroneous. The record discloses a careful and conscientious effort to comply with the mandate of the guidelines while reminding all in the courtroom that the sentencing proceeding—at which a young woman of nineteen was sentenced to incarceration for a period of almost twenty-two years—was indeed a tragic and solemn occasion for the entire community.

### Conclusion

The record contains ample evidence to sustain the verdict of the jury. The district court committed no reversible error in the imposition of the sentences. Accordingly, the judgments of the district court are affirmed.

AFFIRMED.