**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Nikolaos B. BAKER, Defendant–**
**Appellant.**

No. 95–2788.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1996.

Decided March 22, 1996.

David H. Miller (argued), Office of the United States Attorney, Fort Wayne, IN, for Plaintiff-Appellee.

Donald C. Swanson, Jr. (argued), Swanson & Campbell, Fort Wayne, IN, for Defendant-Appellant.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Nikolaos Baker's conviction, on charges of possessing crack cocaine with intent to distribute and using or carrying a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1), and this appeal straddle the decision last December by the United States Supreme Court in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

Because firearm charges under § 924(c) are a staple of federal court jurisprudence, and *Bailey* significantly curtailed the scope of the law, many cases, and Baker's is a good example, present interesting issues.

Baker was sentenced to 7 years on the crack cocaine charge and an additional 5 years, consecutive, on the § 924(c) count. Before we arrive at Baker's significant issue regarding *Bailey,* we need to address an easier issue—his claim that the evidence against him should have been suppressed.

■ Baker was arrested after Indiana State Trooper Robert Brophy found 27 grams of crack and a handgun in Baker's car following a routine traffic stop. Baker raises four related Fourth Amendment claims regarding the discovery and seizure of the drugs and gun. First, he contends they were seized after he was arrested without probable cause. Next, he says he never consented to Brophy's search of his car. Third, he claims he was coerced into giving whatever consent he gave, and last, he says the search exceeded the scope of his consent even if it was given. For these reasons, he argues that the district court erroneously denied his motion to suppress evidence. We review the district court's denial of a motion to suppress evidence for clear error and defer to its factual determinations. *United States v. Willis,* 61 F.3d 526, 529 (7th Cir.1995), petition for cert. filed Oct. 23, 1995.

■ Baker's Fourth Amendment claims rest on his version of the facts. The district court, however, determined after a suppression hearing that Baker's version was not credible. Instead, the court chose to credit Brophy's view of what happened. That determination—to credit Brophy's version rather than Baker's—cannot be clearly erroneous. *United States v. D'Antoni,* 856 F.2d 975, 978–79 (7th Cir.1988), cert. denied, —— U.S. ——, 116 S.Ct. 429, 133 L.Ed.2d 345 (1995) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–

12, 84 L.Ed.2d 518 (1985)). Accordingly, in our analysis of Baker's claims, we consider only Brophy's account of the facts.

■ According to Brophy, his radar clocked Baker's Chevy going 77 miles per hour in a 65 mile per hour zone on Interstate Highway 69 north of Fort Wayne, Indiana. After the car was pulled over for speeding, Brophy approached it with his hand on his gun. Brophy saw Baker reach below the driver's seat. Brophy asked Baker to get out of his car and sit in the squad car. Baker did as requested.

■ Because Brophy had both probable cause for the stop and the authority to act, the stop was valid. *Willis*, 61 F.3d at 530. Once Brophy stopped Baker, the trooper could legitimately ask him to step out of his car, even without any particularized suspicion that Baker possessed a weapon. *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09, 98 S.Ct. 330, 331–32, 54 L.Ed.2d 331 (1977). Finally, the fact that Brophy asked Baker to sit in his patrol car "does not by itself distinguish [Baker's] circumstances from that of any other motorist who has been pulled over for a minor traffic violation." *United States v. Quinones–Sandoval*, 943 F.2d 771, 775 (7th Cir.1991). Baker at this point was not under arrest.

■ Once in his patrol car, Brophy asked Baker a few questions, to which Baker gave inconsistent or suspicious answers: Baker claimed to be going to visit a friend whose name he did not know at a lake of whose location he was uncertain. Brophy then asked if he could search Baker's car. Baker replied, "I don't care—you can if you want to." Brophy asked if there were any drugs or weapons in the car; Baker denied that there were. Brophy again asked for and received permission to search Baker's car. Before leaving his patrol car to conduct the search, Brophy handcuffed Baker. Brophy explained that he did this for his own protection.

Baker's claim that he did not consent or that his consent was ambiguous is meritless. His response to the trooper's request to search his car was clear and unequivocal. Moreover, even after Brophy questioned him about the presence of drugs or weapons in his car, Baker again consented to the search. Thus, the district court was not clearly erroneous in concluding that Baker consented to the search.

Baker nonetheless maintains that his consent was involuntary. His argument on this score, however, is doomed because it rests on facts discredited by the court at the suppression hearing. As we said earlier, we defer to a district court's factual determinations, particularly on credibility, and so we need not consider testimony discredited by the trial court.

■ Baker emphasizes his age and inexperience in arguing that his consent was involuntary. Baker was 21 years old at the time of the search. According to his PSR, he had several minor run-ins with the law prior to the present offense: at age 16, he was placed on probation for possession of a controlled substance; he was twice arrested at age 17 for disorderly conduct; he had five tickets for minor traffic violations. We don't believe Baker was either so young or inexperienced in confrontations with police that he did not have the ability to voluntarily consent to the search. The district court's finding on this point was not clearly erroneous.

■ Baker next argues that because Brophy had his hand on his gun, the consent was coerced. Although Brophy initially approached Baker's car with his hand on his gun-not an unreasonable thing to do at night—he never drew it out of his holster. The district court discredited Baker's passenger's testimony that Brophy threatened them, and even by that account, the alleged threat occurred after Baker consented to the search. Thus, there is no basis for Baker's claim of physical coercion. See, e.g., *United States v. Lechuga*, 925 F.2d 1035, 1042 (7th Cir.1991) (holding that the mere fact that an officer is armed does not lead to the conclusion that consent to search was coerced).

■ The only facts arguably relevant to the voluntariness of Baker's consent were that Baker was sitting in Brophy's patrol car and that Brophy did not give *Miranda* warnings or tell Baker of his right to refuse to consent to the search. Because Baker was

not under arrest at this point, there was no need to give him *Miranda* warnings. *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). Moreover, failure to inform a suspect of his right to refuse to consent to a search does not invalidate a consent that is voluntary. *United States v. Price,* 54 F.3d 342, 347 (7th. Cir.1995) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 234, 93 S.Ct. 2041, 2051, 36 L.Ed.2d 854 (1973)). Based on facts almost identical to these, we affirmed the voluntariness of a consent in *Quinones–Sandoval,* 943 F.2d at 774–75. The district court's determination that Baker voluntarily consented to the search is not clearly erroneous.

 Finally, Baker contends that Brophy's search exceeded the scope of his consent. Brophy found the gun and crack under the driver's seat of Baker's car; the crack was in a black, nylon bag. Baker's consent, however, did not contain any explicit limitations. Even after Brophy identified the intended objects of his search, Baker gave an unqualified consent to search. Consent of this sort includes a consent to search containers within the car that might contain drugs. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). Moreover, Baker never explains what the limits of his consent were or how Brophy exceeded them. Thus, there is no merit to this claim.

In sum, Baker's Fourth Amendment claims are baseless. The district court was not clearly erroneous in denying the motion to suppress the evidence found in his car. That said, we arrive at the *Bailey* issue.

The weapon found in Baker's car was a loaded 10 millimeter semi-automatic handgun. Its hammer was cocked, so that a slight touch on the trigger would set it off. It was resting on top of a nylon bag containing 27 grams of crack cocaine. Both were under the seat Baker was occupying when he drove the car.

Baker argues that there was insufficient evidence to convict him of the firearm charge under 28 U.S.C. § 924(c)(1). Baker claims that the weapon's placement on top of a bag containing 27 grams of crack underneath the driver's seat of his car was "a mere accident

or coincidence," and was unrelated to his drug trafficking conviction. Baker further contends that because there were two passengers in the car along with him, there was insufficient evidence upon which the jury could have found that the gun belonged to him.

 In a challenge to a conviction based on a claim of sufficiency of the evidence, we review evidence presented at trial in the light most favorable to the government, and will uphold the conviction if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Taylor,* 31 F.3d 459, 464 (7th Cir.1994). At trial, Brophy testified that Baker told him that the gun was his and that he kept it for protection. The gun was resting underneath the driver's seat with the barrel pointing toward the rear of the car and the handle toward the front—so the driver could reach underneath the seat and immediately grab the weapon. A government expert testified that a person carrying the amount of drugs and a weapon of the type found in Baker's car was most likely a drug dealer. Based on this evidence, the jury could have rationally concluded that the gun was Baker's and that he carried it during and in relation to the drug trafficking offense for which he was convicted in Count I.

After Baker was convicted, the Supreme Court, on December 6, 1995, decided *Bailey,* which significantly curtailed the reach of § 924(c)(1). Both parties submitted supplemental briefs addressing how *Bailey* affects Baker's conviction.

In *Bailey,* two defendants were convicted under § 924(c)(1). When police arrested one defendant after a routine traffic stop, they found cocaine in the passenger compartment of his car and a loaded pistol and a large amount of cash in the locked trunk of the car. In a separate incident, police arrested the second defendant when they found cocaine and an unloaded gun in a locked trunk in her bedroom closet while executing a search warrant. Because separate panels of the D.C. Circuit reached contradictory holdings in the two cases, the court consolidated the two

cases and reheard them en banc. The court affirmed both defendants' convictions, holding that both guns were sufficiently proximate and accessible to the drugs or drug proceeds to further the drug offenses.

The Supreme Court reversed the circuit court's decision. The Court held that the D.C. Circuit's "accessability and proximity" standard equated "use" of a firearm with "possession." *Bailey*, — U.S. at ——, 116 S.Ct. at 506. The Court held that had Congress intended to punish mere possession of a gun during and in relation to a drug offense, it would have done so. *Id.* Moreover, such a broad interpretation of "use" rendered the statutory term "carry" superfluous, a result the Court rejected. *Id.* at ——, 116 S.Ct. at 507. Instead, the Court held that to be convicted of use of a firearm under § 924(c)(1), the prosecution must show "that the defendant actively employed the firearm during and in relation to the predicate crime." *Id.* at ——, 116 S.Ct. at 509. Such active use includes brandishing, displaying, bartering, striking with, firing, attempting to fire, or even referring to a firearm in one's possession. *Id.* at ——, 116 S.Ct. at 508. But, the Court held, "the inert presence of a firearm, without more, is not enough to trigger § 924(c)(1).... A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds." *Id.*

*Bailey* also distinguished "use of a firearm" from "carrying a firearm" within the meaning of § 924(c)(1). The Court stated that "the 'carry' prong of § 924(c)(1) ... brings some offenders who would not satisfy the 'use' prong within the reach of the statute." *Id.* at ——, 116 S.Ct. at 509. "A firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction." *Id.* at ——, 116 S.Ct. at 507. The Court remanded both defendants' cases for consideration of whether the defendants "carried" a firearm as a basis for upholding their convictions. *Id.* at ——, 116 S.Ct. at 509.

Section 924(c)(1) punishes someone who, "during and in relation to any ... drug trafficking crime," either "uses or carries a firearm." The indictment in this case charged that Baker "used and carried a firearm" in connection with his crack cocaine trafficking as alleged in count one.

 At Baker's trial, the court instructed the jury that:

> The phrase "uses or carries a firearm" means having a firearm, or firearms, available to assist or aid in the commission of the crime alleged in Count I of the indictment.

> In determining whether the defendant used or carried a firearm, you may consider all of the factors received in evidence in the case including the nature of the underlying crime of drug trafficking alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged and the circumstance surrounding the presence of the firearm.

> The government is not required to show that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time a drug trafficking crime was committed.

These instructions were partially incorrect under *Bailey* for the jury could have convicted Baker merely for having a firearm in his possession, a result the Supreme Court rejected. (We do not, of course, mean this as a criticism of Judge Lee in the district court for he instructed the jury under the correct circuit precedent when this case was tried.) Significantly, however, Baker did not object to the instruction. Thus, we may reverse his conviction only if the error in the instructions was plain error. *United States v. Maloney*, 71 F.3d 645 (7th Cir.1995). A plain error is one that will cause a miscarriage of justice unless corrected. *United States v. Olano*, 507 U.S. 725, 736–37, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (citations omitted). An appellate court "should correct a plain forfeited error affecting substantial rights if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citations omitted). On the other hand, "[t]here is no miscarriage of justice if the defendant's guilt is so clear that he would certainly have been convicted even

if the error had never been committed." *United States v. Kerley,* 838 F.2d 932, 937 (7th Cir.1988). "To determine whether the claimed error was so prejudicial ... [so as] to constitute reversible error, the submitted [jury] instructions must be viewed in light of the facts of the case and the evidence presented." *United States v. Garcia,* 897 F.2d 1413, 1422 (7th Cir.1990) (citation omitted). Thus, there is no plain error if a properly instructed jury would nevertheless have convicted Baker.

There was no evidence at trial that Baker ever "used" the gun as that term was defined in *Bailey.* The question, then, is: Would a properly instructed jury have concluded that Baker "carried" the gun, and therefore nevertheless have convicted him under § 924(c)(1)? "Yes" is the only reasonable answer to this question.

■ At oral argument, Baker's counsel argued that the term "carry" encompasses only situations in which the defendant has a gun on his person. This definition is far too narrow. Webster's dictionary lists 23 separate definitions of "carry," only the eighth of which is limited to "wear[ing] or hav[ing] on one's person." Merriam–Webster's Collegiate Dictionary 175 (10th ed.1993). We cannot imagine that Congress intended so slim a meaning. Fortunately, we need not consider all 22 other definitions—the first suffices: "to move while supporting: TRANSPORT." *Id.* Under this definition, there is little question that transporting a gun in a car within reasonable reach constitutes "carrying" for the purposes of § 924(c)(1). See *United States v. Freisinger,* 937 F.2d 383, 387 (8th Cir. 1991); *United States v. Cardenas,* 864 F.2d 1528, 1535–36 (10th Cir.1989), cert. denied, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989).

This definition of "carry" is consistent with *Bailey.* Under this definition, the inert presence of a firearm, without more, will not trigger liability under § 924(c)(1). Rather, it is the possession of the firearm coupled with the affirmative act of transporting it during and in relation to a drug trafficking crime that precipitates liability under § 924(c)(1); here, the act of carrying or transporting the firearm is the "something more" *Bailey* requires.

■ The Sixth Circuit recently considered the effect of *Bailey* on a case similar to ours. In *United States v. Riascos–Suarez,* 73 F.3d 616 (6th Cir.1996), the court affirmed the defendant's conviction under § 924(c)(1) for carrying a gun. The defendant there did not have the gun on his person; rather, it was "protruding from the driver's side of the console" of the car the defendant was driving. Nonetheless, the Sixth Circuit held that under *Bailey,* the defendant could be convicted of carrying the gun because "the firearm [was] immediately available for use—on the defendant or within his or her reach. Such availability takes the weapon beyond simple possession or storage." *Id.* at 623. We agree with the Sixth Circuit and hold that a defendant who transports a gun on his person or within his reach, available for immediate use, during and in relation to a drug trafficking crime may—consistent with *Bailey*—be convicted of carrying a firearm under § 924(c)(1).

We note, however, one significant limitation to our holding today: *Riascos–Suarez* appears to hold that a defendant may be convicted for carrying a firearm only if the weapon is within the defendant's reach and immediately available for use. While it is certainly true that at some point a defendant's access to a firearm being transported becomes so distant and attenuated that he can no longer be said to be carrying it, we do not decide today how immediate his access must be in order to sustain a conviction under § 924(c)(1). We do not, for example, offer an opinion today on whether a defendant who has drugs and a fully operable and loaded gun locked in the trunk of his car could be convicted under § 924(c)(1) for carrying a firearm. Rather, we hold simply that at least where a defendant is transporting a weapon within his immediate reach, he may be convicted under § 924(c)(1).

■ Based on this evidence presented at trial, the jury found that "the firearm was in the defendant's possession or under the defendant's control at the time a drug trafficking crime was committed." The only believable evidence as to the weapon's location

indicated that it was under the driver's seat, easily within Baker's reach and available for immediate use. The weapon was also clearly being moved or transported. A properly instructed jury, therefore, certainly would have concluded that Baker was carrying the gun within the meaning of § 924(c)(1). Thus, there was no plain error, and we affirm Baker's conviction on the weapon charge.

Baker also raises a variety of constitutional challenges to the provisions of the sentencing guidelines under which he was sentenced. Baker's first claim is that sentences for possession of crack under the guidelines are racially discriminatory. We considered and rejected this argument, *United States v. Jones,* 54 F.3d 1285, 1293–94 (7th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 263, 133 L.Ed.2d 186 (1995); *United States v. Chandler,* 996 F.2d 917 (7th Cir.1993). Second, Baker alleges that the harsh penalties for possession of crack cocaine violate the Eighth Amendment's prohibition of cruel and unusual punishment. Our previous holdings reject this claim as well. *United States v. Smith,* 34 F.3d 514, 525 (7th Cir.1994). Baker's final argument is that the distinction between cocaine and cocaine base is scientifically meaningless and ambiguous, and thus, under the rule of lenity, the district court should have applied the lower sentences for powder cocaine. Baker further asserts that there is no rational basis for punishing possession of crack cocaine more severely than possession of powder cocaine. Once again, we have thoroughly considered and rejected these arguments. *United States v. Booker,* 70 F.3d 488 (7th Cir.1995).

For these reasons, the judgment of the district court is AFFIRMED.