**UNITED STATES of America, Plaintiff,**

**v.**

**Steven Q. CORBETT, Defendant.**

**No. 96 C 856 (89 CR 784).**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 6, 1996.

Steven Q. Corbett, Sandstone, MN, pro se.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of defendant Steven Q. Corbett ("Corbett") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the motion is denied.

### I.

Corbett moves the court to vacate his conviction under 18 U.S.C. § 924(c)(1) for the "use or carrying" of a firearm while committing drug trafficking crimes. Corbett was charged with conspiracy to distribute cocaine, possession of 1,003 grams of cocaine with intent to distribute, and the use or carrying of a nine-millimeter semi-automatic handgun and a .38 caliber handgun during and in relation to the commission of drug trafficking crimes, the sole count at issue in the instant motion. At trial, the Government introduced evidence that Corbett and four other defendants arranged and eventually sold to an undercover police officer over three kilograms of cocaine. All five defendants took part in the sale, which took place in a McDonald's parking lot. After one of the defendants tendered the bag of cocaine to the undercover officer, all five defendants, including Corbett, were arrested. Corbett and another defendant were seated inside a Pontiac 3000 automobile at the time of the arrests. Corbett was in the driver's seat. The arresting officers removed Corbett from the car and proceeded to search the car.

During the search, the officers recovered two fully-loaded handguns.

One of the handguns, a nine-millimeter Smith & Wesson, was found in an open black case. The black case was located on the driver's side floorboard area. The other handgun, a fully-loaded Charter Arms revolver, was found on the passenger seat in a leopard-skin case.

After an eight-day trial, the court instructed the jury, with respect to the "use or carrying a firearm" count, as follows:

> To use or carry a firearm during and in relation to the offense[s] [charged in the other counts] of the indictment, it is not necessary for the government to prove that the defendant in question fired, brandished or otherwise displayed a firearm. So long as the defendant in question knowingly possessed the firearm during the course of the offense[s] [charged in the other counts] to facilitate, or with any potential to facilitate, the commission of the offense, then you may find that the defendant used or carried the firearm in relation to that offense.

Neither Corbett nor his attorney objected to the instructions. The jury returned guilty verdicts on all three counts, including the "use and carrying a firearm" count. The court ordered concurrent prison sentences of sixty months for each of the former counts, and an additional consecutive mandatory sentence of sixty months for the latter count.

Corbett appealed to the Seventh Circuit, and both the judgment and sentence were affirmed. Corbett filed, and the court later denied, a motion brought pursuant to 28 U.S.C. § 2255. Approximately four months later, Corbett filed the instant motion, his second under § 2255.

## II.

Section 924(c)(1) of Title 18 of the United States Code states: "Whoever, during and in relation to any crime of violence or drug trafficking crime ..., *uses or carries* a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...." 18 U.S.C. § 924(c)(1) (emphasis added). As such, a defendant can be convicted for a violation of the section if he is found to either "use" or "carry" a firearm while in the commission of a drug trafficking crime. *Id.*

■ A defendant "uses" a firearm when he "actively employs" the firearm in the commission of the offense. *Bailey v. United States*, —— U.S. ——, ——, 116 S.Ct. 501, 505, 133 L.Ed.2d 472 (1995).[1] "The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at ——, 116 S.Ct. at 508. "[E]ven an offender's reference to a firearm in his possession could satisfy § 924(c)(1)." *Id.* However, "use" does "not extend to encompass" an action "where an offender conceals a gun nearby to be at the ready for an imminent confrontation." *Id.* The definition of "carry" is distinct from the term "use"; a defendant "carries" a gun when he possesses and transports it within reasonable reach.[2] *United States v.*

---

1. As Chief Judge Aspen found,
 > The weight of authority, from this circuit and others, supports retroactive application of *Bailey*. Although *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), prohibits the retroactive application of new constitutional rules of criminal procedure, *Bailey* announced a new non-constitutional rule of substantive criminal law which fundamentally changes the result reached in this case, and as such, falls outside what is generally recognized to be *Teague's* purview.
 *United States v. Trevino*, No. 96 C 828, 1996 WL 252570 (N.D.Ill. May 10, 1996).
2. The court notes that the Seventh Circuit's definition of "carry" is expansive. However, since *Bailey*, circuits other than the Seventh Circuit

have also defined the "carry" prong more broadly than previously defined. *See United States v. Giraldo*, 80 F.3d 667, 676–78 (2d Cir.1996 (holding that a driver, as custodian of a vehicle, could be convicted under the "carry" prong, because the firearm was within his easy reach, but that a back seat passenger could not); *United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.1996) (holding that evidence that the defendant transported a firearm in a vehicle and that the firearm was "within reach and immediately available for use," could provide an adequate factual basis for a guilty plea based on the "carry" prong); *United States v. Hernandez*, 80 F.3d 1253, 1258 (9th Cir.1996) (holding that the government must prove only that the defendant "transported the firearm on or about his or her person" in such a

*Baker,* 78 F.3d 1241, 1247 (7th Cir.1996).[3]

### III.

■ Corbett avers that his conviction and sentence for the "use" of a firearm should be

way that it was "immediately available for use"); *United States v. Miller,* 84 F.3d 1244, 1260–61 (10th Cir.1996) (holding that a firearm contained in a bag in the rear of a van supports an inference that the driver of the van had knowledge of the firearm and therefore exercised dominion and control over it and, thus, a jury could find that he "carried" the firearm); *United States v. Farris,* 77 F.3d 391, 395–96 (11th Cir.1996) (concluding that a reasonable jury could convict under the "carry" prong based only upon evidence the defendant used a vehicle as a "drug distribution center" and that he knew there was a firearm in the glove compartment).

3. Respectfully, the court is not unaware of disagreement with the Seventh Circuit's (as well as its sister circuits') definition of the word "carry." While the court is certainly bound by precedent, and therefore willingly applies the Seventh Circuit definition to the instant case, the expansive, extremely-inclusive meaning of "carry" in light of the Supreme Court's narrow definition of "use" seems to require more fleshing out.

There can be no doubt that the *Bailey* case dealt solely with the term "use." However, it does not follow that *Bailey* should have no effect on the other prong found in § 924(c)(1), the "carry prong." *United States v. Price,* 76 F.3d 526, 528 (3rd Cir.1996). According to the Third Circuit, "It is no longer enough [under either the "carry" or "use" prong] that the weapon be available to the defendant; rather, it must have played an active role in the perpetration of the predicate offense beyond emboldening the perpetrator." *Id.*

The Supreme Court stated that "the inert presence [—i.e. possession—] of a firearm, without more, is not enough to trigger § 924(c)(1).... Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession." *Bailey,* —— U.S. at ——, 116 S.Ct. at 508. In support of its conclusion, the Court stated, "If Congress had intended to deprive 'use' of its active connotations, it could have simply substituted a more appropriate term—'possession'—to cover the conduct it wished to reach." *Id.*

This court infers from *Bailey* that, with regard to the "carry" prong, something more than mere "hauling," "without its more active employment," is necessary to be distinguishable from "transporting." If Congress had wished to deprive "carry" of its "active connotations," it could have simply substituted the term "transporting" to encompass the behavior it wished to punish.

The court views as the better definition the ordinary, layperson's definition of "carry" in relation to firearms and other weapons. *See id.* at ——, 116 S.Ct. at 506. *See also United States v. McFadden,* 13 F.3d 463, 467 (1st Cir.1994)

vacated in light of the recent Supreme Court decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The court agrees that the evidence produced at trial does not support a finding that Cor-

(Breyer, C.J., dissenting). Of the twenty-six definitions of "carry" found in Webster's II New Riverside University Dictionary (1988) ("Webster"), the court finds definition number seven to be the better meaning of "carry" for purposes of § 924(c)(1): "To have or keep on one's person." *Id.* at 233. Coincidentally, the verbal illustration relating to this definition is: "<carry *a gun*>." *Id.* (emphasis added); *See also United States v. Hernandez,* No. 96 C 1436, slip op., 934 F.Supp. 1001 (N.D.Ill.1996) (defendant concealed a handgun in the waistband of his pants).

Webster definition number seven, which the court acknowledges is very similar to the definition disposed of by the Seventh Circuit in *United States v. Baker,* 78 F.3d 1241, 1247 (7th Cir. 1996), is also in accordance with the message implied in *Bailey.* To be sentenced under § 924(c)(1), a defendant must "actively employ" a firearm in a drug trafficking crime. Respectfully, the very existence of a gun inside the cab of a car (which will, in almost all cases, be within the defendant's reasonable reach) does not ordinarily fall within the definition of "active employment" of a weapon. *But see Baker,* 78 F.3d at 1247. As *Bailey* makes clear, the fact that the weapon is available to the defendant is not enough; the weapon must have "played an active role in the perpetration of the predicate offense beyond emboldening the perpetrator." *Price,* 76 F.3d at 528. Under the current Seventh Circuit definition, one need not even have knowledge of a firearm's existence to "carry" it. As long as a firearm is within reach and is transported in any fashion other than by foot, such as by car, boat, bike, or horse, a defendant is subject to a mandatory five year sentence, even if he had no idea that the gun was in his presence. Should such a defendant be subject to no less than the mandatory five year prison sentence as would a person who brandished, displayed, and fired a firearm in the midst of a drug sale? Some courts, including this one, suggest that he shouldn't.

Instead, the application of a narrower definition, requiring that a person physically "carry" a gun on his person to be guilty under § 924(c)(1), seems more equitable. Thus, a person is criminally liable under the Section if he "actively employs" the gun whether it be by active use or physical possession on the defendant's person. The narrower definition is more congruous with *Bailey* than the Seventh Circuit definition. Therefore, while the court willingly and deferentially follows Seventh Circuit precedent, *United States v. Sung,* 87 F.3d 194, 196 (7th Cir.1996) ("[t]he decision of a higher court controls whether the lower tribunal agrees or not"), the court respectfully suggests that the Seventh Circuit's definition of "carry" should be applied deliberatively.

bett "used" a firearm while involved in the drug sale. However, since the evidence supports a finding that Corbett "carried" a firearm while selling cocaine, the court disagrees that the *Bailey* decision compels it to vacate the sentence.

■■■■ At the outset, the court concedes that its instruction relating to the "use or carrying" a firearm count—while proper under circuit precedent when the case was tried[4]—is now considered an improper jury instruction in light of *Bailey.* "*Bailey* makes clear that, contrary to the jury instructions given by the . . . court, it is not enough that the weapon facilitates the drug offense by emboldening the defendant." *United States v. Smith,* 80 F.3d 215, 220 (7th Cir.1996). Yet, Corbett neither objected to the instruction at trial nor argued its impropriety on appeal.[5] Thus, the conviction may be vacated on collateral review only if the error in the jury instruction constituted plain error. *Baker,* 78 F.3d at 1246.

A plain error is one that will cause a miscarriage of justice unless corrected. [A district court] should correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. On the other hand, there is no miscarriage of justice if the defendant's guilt is so clear that he would certainly have been convicted even if the error had never been committed. To determine whether the claimed error was so prejudicial . . . so as to constitute reversible error, the submitted jury instructions must be viewed in light of the facts of the case and the evidence presented. Thus, there is no plain error if a properly instructed jury

would nevertheless have convicted [the defendant].

*Baker,* 78 F.3d at 1246–47 (citations omitted).

If the instant case, no evidence existed at trial to show that Corbett "actively employed" either handgun; thus, Corbett's mere possession of the firearm within his reach does not meet the Supreme Court's definition of "use" of a firearm. "The question, then, is: Would a properly instructed jury have concluded that [Corbett] 'carried' the gun, and therefore nevertheless have convicted him under § 924(c)(1)?" *Id.* at 1247. The answer: "yes."

Bound by Seventh Circuit precedent, "there is little question that transporting a gun in a car within reasonable reach constitutes 'carrying' for the purposes of § 924(c)(1)." *Id.* The undisputed trial evidence reveals that Corbett transported the two firearms in the Pontiac 3000, placed one of the guns on the roof of the car, put the gun back into the car, and transported the guns to a second location. The firearms with which Corbett was found guilty of either "using" or "carrying" were later found in the passenger seat and on the driver's side floorboard. As conceded by Corbett, the "two loaded guns were recovered inside the car within easy reach" of him and his co-defendant. (Mem. in Supp. of Mot. to Vacate Conviction, at 5.) A properly instructed jury, therefore, would undoubtedly have concluded that Corbett was "carrying"—as defined by the Seventh Circuit—the guns. The court finds that the improper jury instruction, while in error, did not rise to the level of plain error. Accordingly, the court denies Corbett's motion to vacate his § 924(c)(1) sentence.

The court is aware of another case with similar facts, but with a dissimilar outcome.

---

**4.** In 1990, the applicable test used by courts sitting in the Seventh Judicial Circuit was known as the "strategic proximity test." *See United States v. Malin,* 908 F.2d 163, 168 (7th Cir.1990). Under that test, a defendant who maintained an accessible firearm near the drugs or transaction "used" the weapon to protect the drugs, and therefore violated § 924(c)(1). *See United States v. Woods,* 995 F.2d 713, 718 (7th Cir.1993).

**5.** The court notes the "somewhat unusual situation here, however, because an intervening change in the law—the *Bailey* decision—has rendered a jury instruction which was at least largely correct at the time partially incorrect now." *United States v. Spring,* 80 F.3d 1450, 1464 (10th Cir.1996). Therefore, the court allows Corbett to raise the issue in this § 2255 motion, even though he did not raise it on appeal.

In *Smith,* the defendants were convicted and sentenced under 18 U.S.C. § 924(c)(1). *United States v. Smith,* 80 F.3d at 220. The jury, as here, was improperly instructed as to the "use" prong of § 924(c)(1). The Seventh Circuit found that the trial evidence was "sufficient to establish "carrying," but also found that the evidence did not "compel" such a finding." *Id.* at 221. The Seventh Circuit, thus, reversed the § 924(c)(1) count and remanded the case to the district court for a new trial on that count. *Id.* at 222.

 The case *sub judice* presents a different standard of review, and therefore does not require the court to order a new trial. While the *Smith* defendants raised the issue on direct appeal and objected to the jury instruction at trial, thereby preserving properly the issue for appeal, Corbett did not object to the jury instruction at trial, did not raise the issue on appeal, and did not even take issue with the instruction in his first § 2255 motion. Thus, the court must here apply a "plain error" standard of review, *Baker,* 78 F.3d at 1246, as opposed to the normal standard of review utilized in challenged jury instructions. *United States v. Cheek,* 3 F.3d 1057, 1060 (7th Cir.1993). "So long as the instructions [to which a defendant objected] treat the issues fairly and accurately, they will not be disturbed on appeal." *Id.* ("Whether a jury has been properly instructed is to be determined not upon consideration of a single paragraph, sentence, phrase or word, but upon the charge as a whole." *Id.*) While the instructions may not have "treated the issues fairly and accurately," the improper instructions did not constitute a "plain error" and, thus, do not require a new trial. *Baker,* 78 F.3d at 1247.

### IV.

For the foregoing reasons, Corbett's Motion to Vacate, Set Aside, or Correct his sentence is denied.

IT IS SO ORDERED.