**UNITED STATES of America, Plaintiff,**

v.

**Jose BARRAZA–MURILLO, Defendant.**

**Nos. 96 C 4995, 91 CR 759–1.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 26, 1996.

---

Ronald D. May, Asst. U.S. Atty., Chicago, IL, for U.S.

Jose Barraza–Murillo, Big Springs, TX, pro se.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on the petitioner's motion to reduce, vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, this motion is denied.

## BACKGROUND

This motion stems from a guilty plea by petitioner Jose Barraza–Murillo ("Barraza–Murillo") to a charge of using or carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). On March 2, 1992, the morning of his scheduled trial, Barraza–Murillo plead guilty to three counts of the indictment against him: conspiracy to possess with intent to distribute cocaine, possession with intent to distribute seven kilograms of cocaine, and the § 924(c)(1) charge. On June 16, 1992, he was sentenced to ten years in prison for the first two counts and to an additional mandatory five year consecutive term of imprisonment for the § 924(c)(1) violation. On August 12, 1996, Barraza–Murillo filed this present motion to vacate his sentence. *See* Government's Response to Defendant's Motion at 1–2.

The following facts are taken from the government's brief and summarize the evidence which the government was prepared to present against Barraza–Murillo and the other defendants at trial. The indictment against Barraza–Murillo also was brought against several other defendants (collectively "defendants"), including Jose Jimenez–Zarate ("Jimenez–Zarate"). It charged the defendants with, among other offenses, conspiring together to possess, transport, and sell at least fifteen kilograms of cocaine.

On September 6, 1991, Barraza–Murillo was contacted by an informant for the Drug Enforcement Administration ("DEA"), the purpose of which was to negotiate the purchase of six kilograms of cocaine. After several discussions, Barraza–Murillo told the informant that he would be able to produce the required amount, and they agreed to meet on September 12 to consummate the deal. The parties met at the appointed place and time, but Barraza–Murillo's source did not arrive and the deal had to be postponed.

On September 17, after several more conversations with Barraza–Murillo, the informant and his partner met with Barraza–Murillo on the street outside of Barraza–Murillo's Chicago apartment. They, along with the other defendants, proceeded to another location where the deal was to be consummated. However, waiting at that location were DEA agents, who promptly arrested all of the defendants. At the time of his arrest, two loaded semi-automatic pistols were found on Jimenez–Zarate. In addi-

tion, the DEA agents subsequently searched Barraza–Murillo's apartment, with his consent, and found two other weapons located there.

With these facts in mind, we turn to the motion before us.

## DISCUSSION

Barraza–Murillo moves to vacate his sentence and conviction for using or carrying a firearm during a drug trafficking crime in light of the Supreme Court's recent decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). While Barraza–Murillo was not in possession of a firearm himself during the underlying drug crime, one of his co-conspirators was. Barraza–Murillo was charged with violating § 924(c)(1) according to the Supreme Court decision of *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), which held that an act in furtherance of a conspiracy is attributable to all co-conspirators under certain circumstances. Barraza–Murillo now seeks to vacate his sentence for this count, arguing that *Bailey* renders his conviction for "possession" of a firearm void. We will now turn to a discussion of the application of *Bailey* to this case, and also outline whether *Pinkerton* was properly applied to hold Barraza–Murillo accountable for the acts of his co-conspirator.

### 1. Using or Carrying A Firearm In a Drug Crime

We first wish to note that Barraza–Murillo bases his motion to vacate on an erroneous belief as to the basis of his § 924(c)(1) charge. As discussed above, there were two separate instances in which guns were found in this case: guns were removed from one of Barraza–Murillo's co-conspirators at the scene of the drug deal, and two guns were found in a subsequent search of Barraza–Murillo's apartment. The petitioner bases his motion on the premise that he was convicted for the latter guns, arguing that merely having them in his apartment does not constitute "use" of a firearm under *Bailey*. While this argument may be meritorious in theory, it is of no avail to the petitioner here.

It is clear that Barraza–Murillo was charged under § 924(c)(1) for the use or carrying of the guns which were found on Jimenez–Zarate, not for the guns which were found in his apartment. *See* Transcript, Excerpt of Proceedings—Change of Pleas Before the Honorable Charles P. Kocoras at 18 (hereafter "Transcript") ("Now, Count III charges each of you [with] carrying a firearm—the firearm described is a .22 caliber pistol and a .38 semi-automatic pistol—during the commission of the drug crime [in the other counts of the indictment].") The guns found in Barraza–Murillo's apartment were a .30 caliber semi-automatic carbine and a .44 caliber revolver. *See* Government's Response at 6. Therefore, it is clear that the guns found in his apartment are not the same guns which Barraza–Murillo was charged with using or carrying under § 924(c)(1), and his motion, which erroneously states that they are the basis of his conviction, must be denied.

It is true that the guns found in his apartment were discussed in Barraza–Murillo's P.S.I. Report. The P.S.I. states that "A further aggravating factor is that ... it was later discovered that the defendant had, in his apartment, a fully loaded .30 caliber semiautomatic carbine and a fully-loaded .44 caliber revolver." *See* Petitioner's Motion at 3. However, the mention of these guns in the P.S.I. is to determine the applicable guideline range for imposing sentence and is not in any way connected with the indictment in the case. Since Barraza–Murillo now erroneously alleges that he was indicted (and plead guilty) based on the guns found in his apartment, his motion to vacate his sentence must be denied.

██ Since this § 2255 motion was filed by Barraza–Murillo *pro se*, however, we must construe it liberally. Therefore, we will proceed to a discussion of whether his § 924(c)(1) conviction for use or carrying of guns by his co-conspirators was affected by *Bailey*. Because we find that it was not, we therefore must deny Barraza–Murillo's motion.

In *Bailey,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472, the Supreme Court defined

the term "use" for purposes of 18 U.S.C. § 924(c)(1), which in pertinent part provides:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

In *Bailey*, the Court held that "use" entails "an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey*, —— U.S. at ——, 116 S.Ct. at 505 (emphasis in original). Active employment includes such actions as brandishing, displaying, bartering, striking with, firing, or attempting to fire a firearm, and can include referencing a firearm in a person's possession. *Bailey*, —— U.S. at ——, 116 S.Ct. at 508.

In addition to the active use of a gun in a drug trafficking offense, § 924(c)(1) also criminalizes carrying a gun in such circumstances. While *Bailey* clarified the meaning of "use" under the statute, the Supreme Court indicated that they were not considering criminal liability under the "carrying" portion of the statute. *Bailey*, —— U.S. at ——, 116 S.Ct. at 509. *See also United States v. Booker*, 73 F.3d 706, 709 (7th Cir. 1996) (stating that *Bailey* did not reach the meaning of "carry" under the statute). The Seventh Circuit has interpreted "carrying" to mean "to move while supporting: TRANSPORT." *United States v. Baker*, 78 F.3d 1241, 1247 (7th Cir.1996) (emphasis in original). With this definition in mind, it is clear that Jimenez–Zarate was "carrying" a gun for purposes of § 924(c)(1), and that he was not convicted for mere "possession" of a gun.

While it is true that the defendants' respective judgments reflect that they plead guilty to "possession of a firearm during a drug offense," *see* Judgment in a Criminal Trial of Barraza–Murillo at 1, there is ample evidence that the defendants were aware, at the time they plead guilty, that they were charged with "use" or "carrying" of a gun during a drug trafficking crime and not merely "possession." The indictment against Barraza–Murillo and Jimenez–Zarate charges them with the following:

> [the] defendants herein, used or carried a firearm, namely a .22 caliber semi-automatic pistol and a .380 semi-automatic pistol, during and in relation to the commission of drug trafficking crimes ...

*See* Grand Jury Indictment filed Oct. 16, 1991 at 5. Furthermore, at the time they plead guilty, it was clear that they were being charged under the "carrying" prong of the statute. At the plea hearing, this court reiterated to the defendants that "Count III charges each of you [with] carrying a firearm...." *See* Transcript at 18, lines 5–6. In addition, Jimenez–Zarate admitted that he had the guns with him at the time the drug deal occurred, *see* Transcript at 35, lines 2–19, and also that he knew that there was going to be a drug deal at that location. *See* Transcript at 34–35. Therefore, the defendants certainly knew, at the time of their plea, that they were being charged with "carrying" the guns and not merely "possessing" them.

■ Furthermore, the evidence amply shows that a factual basis exists for Jimenez–Zarate's guilty plea to the § 924(c)(1) charge, a requirement recently found by the Tenth Circuit in *United States v. Barnhardt*, 93 F.3d 706, 709–710 (10th Cir.1996). Using the definition of "carry" set forth in *Baker*, 78 F.3d at 1247, Jimenez–Zarate clearly transported a gun in relation to a drug trafficking crime. He knew that he was going to be present at a drug deal, and he brought a gun along with him to that deal. *See* Transcript at 34–35. In the Seventh Circuit, "possession of [a] firearm coupled with the affirmative act of transporting it during and in relation to a drug trafficking crime ... precipitates liability under § 924(c)(1)." *Baker*, 78 F.3d at 1247. The evidence which would have been presented by the government had this case gone to trial, and the words of Jimenez–Zarate himself at his plea hearing, establish that he transported a gun during a drug deal, and thus a factual basis exists for his guilty plea to the § 924(c)(1) charge. Therefore, Jimenez–Zarate's plea of guilty to "carrying" is factually based, and he clearly did not plead guilty based on his mere "possession" of a gun.

Having established that Jimenez–Zarate's conviction under § 924(c)(1) was proper, we must now determine whether Barraza–Murillo's guilty plea for a violation of § 924(c)(1) on an attribution basis is factually supported as well.

### 2. *Pinkerton*

■ In *Pinkerton*, the Supreme Court held that acts in furtherance of a conspiracy committed by one member of the conspiracy are attributable to all co-conspirators if the act was reasonably foreseeable as a necessary consequence of the conspiracy. *Pinkerton*, 328 U.S. at 645–648, 66 S.Ct. at 1183–85; *see also United States v. Diaz*, 864 F.2d 544, 549 (7th Cir.1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989). In the Seventh Circuit, the presence of firearms at a transaction involving sizeable quantities of drugs is considered "reasonably foreseeable." *United States v. Williams*, 31 F.3d 522, 526 (7th Cir.1993). *See also Diaz*, 864 F.2d at 549 (when individual conspires to sell kilogram of cocaine, it is reasonable to assume that a weapon would be carried).

■ In this case, the defendants had conspired to sell six kilograms of cocaine, certainly a sizeable quantity. It was therefore reasonably foreseeable that guns may have been brought to the sale by somebody, even if Barraza–Murillo was unaware of their actual presence. In addition, Barraza–Murillo plead guilty to the drug conspiracy counts alleged against him, sufficiently establishing the existence of a conspiracy. Thus, since there was ample evidence of a conspiracy and that the presence of guns at the transaction was reasonably foreseeable, a factual basis exists for Barraza–Murillo's plea of guilty in this case, and we will not disturb it. We therefore deny his motion to vacate his sentence in this case.

### CONCLUSION

For the reasons set forth above, Barraza–Murillo's motion to vacate his conviction under § 924(c)(1) is denied.