NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 14, 2010
Decided January 6, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 10-1086

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 2:08-cr-20036-MPM-DGB-3 |
| JESSIE L. TRAYLOR, *Defendant-Appellant*. | Michael P. McCuskey, *Chief Judge*. |

**O R D E R**

Jessie Traylor was indicted on, and convicted of, four drug-related offenses. On appeal Mr. Traylor argues that the Government presented insufficient evidence at trial to sustain the jury's verdicts on two of his convictions. For the reasons that follow, we affirm.

**I**

A grand jury charged Mr. Traylor with one count of conspiracy to distribute cocaine, 21 U.S.C. §§ 846, 841(a), one count of possession with intent to distribute cocaine, *id.* § 841(a)(1), and two counts of using a telephone in furtherance of a drug-trafficking crime,

*id.* § 843(b).[1] Two of Mr. Traylor's alleged coconspirators, Dana Hawkins and Djuan Davis, pleaded guilty and testified against Mr. Traylor.

The evidence presented by the Government at trial established the following course of events:  Hawkins and Davis began distributing cocaine in May 2007.  Hawkins, who was based in Decatur, Illinois, supplied funds to Davis.  Davis then bought cocaine from suppliers in Chicago and delivered the drugs to Hawkins, who sold them.  Beginning in August 2007, Hawkins paid Mr. Traylor, a long-time friend, to drive him to Chicago with purchase money.  Davis would then buy the drugs and deliver them to Hawkins in Decatur.  In September 2007, Davis was arrested and ceased delivering cocaine for the next four months.  In January 2008, Hawkins and Davis resumed buying cocaine at a rate of one to two kilograms of cocaine per week.  The coconspirators testified that, during the first six months of 2008, Mr. Traylor carried the drugs by bus from Davis in Chicago to Hawkins in Decatur for most of the deliveries.

In early June 2008, Hawkins and Davis arranged to purchase another kilogram of cocaine.  Davis testified that on June 5, 2008, he gave the cocaine to Mr. Traylor, who put the drugs in a backpack.  Intercepted phone calls confirm that Davis then told Hawkins that Mr. Traylor had the cocaine.  Mr. Traylor boarded a bus from Chicago to Decatur later that day.  When the bus arrived in Champaign, Illinois, police officers from Decatur boarded the bus and announced that they were conducting a drug investigation.  An officer identified a bag stowed near Mr. Traylor as the same backpack Mr. Traylor had carried on a previous trip from Chicago to Decatur.  When questioned, however, Mr. Traylor disclaimed ownership of the bag.  None of the remaining passengers claimed the bag, so the officers secured it as abandoned property.  Inside was a kilogram of cocaine and several of Mr. Traylor's personal effects.  His fingerprints were lifted from the cocaine's packaging.

Mr. Traylor testified on his own behalf at trial.  He admitted to being a long-time friend to both Hawkins and Davis and to driving Hawkins several times between Chicago and Decatur.  He also admitted that Hawkins compensated him for driving but insisted that the reason was because Hawkins was often too drunk and did not like to drive.  He denied transporting drugs for Hawkins and Davis.  Mr. Traylor conceded that he previously had borrowed the backpack and that it contained several of his personal belongings.  But he denied possessing the backpack or the cocaine inside on the day of his arrest; Mr. Traylor told the jury that the backpack already was on the bus when he boarded.

**II**

---

[1]  A fifth criminal-forfeiture count was dismissed before trial.

On appeal, Mr. Traylor argues that the Government failed at trial to present evidence sufficient to sustain his conspiracy and possession convictions. When assessing the sufficiency of the evidence, we ask whether, viewing the evidence in the light most favorable to the prosecution, any rational jury could have found the defendant guilty of the crime in question beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Taylor*, 600 F.3d 863, 868 (7th Cir. 2010).

## A.

Mr. Traylor first contends that the Government presented insufficient evidence at trial to support his conspiracy conviction. He argues that Hawkins and Davis, both of whom played much larger roles in the alleged conspiracy, implicated him because they hoped their cooperation would net them a lenient sentence. This motivation, he argues, rendered their testimony unreliable. To convict Mr. Traylor of conspiracy to possess with intent to distribute cocaine, the Government had to show (1) "the existence of an agreement between two or more persons to possess with intent to distribute cocaine; (2) that the defendant knew of the agreement; and (3) the defendant intended to join the agreement." *Taylor*, 600 F.3d at 868; *United States v. Billops*, 43 F.3d 281, 284 (7th Cir. 1994) (same). Mr. Traylor concedes the first two elements and disputes only the element of participation.

Mr. Traylor admits, however, that, in essence, he is arguing that the Government did not offer "credible evidence that he participated in the conspiracy." Appellant's Br. 30. This concession dooms his argument. We repeatedly have held that we shall not reweigh evidence or reassess credibility determinations made by a jury. *United States v. Hampton*, 585 F.3d 1033, 1042 (7th Cir. 2009); *United States v. Anderson*, 580 F.3d 639, 646 (7th Cir. 2009). Hawkins and Davis both testified that Mr. Traylor knowingly participated in the conspiracy, first driving Hawkins to drug transactions and later transporting funds and cocaine by bus between Chicago and Decatur. The Government corroborated this testimony with several recorded phone conversations between the coconspirators. Furthermore, both Hawkins and Davis acknowledged at trial that they had cooperated in hope of securing favorable treatment at sentencing; consequently, the jury was privy to their motivations when it assessed their credibility. *See United States v. Bailey*, 510 F.3d 726, 734 (7th Cir. 2007). Mr. Traylor claimed that he was not a knowing participant, but he admitted to several acts consistent with his knowledge and participation (including driving Hawkins for money and making several trips by bus on Hawkins's and Davis's behalf). The jury was entitled to reject Mr. Traylor's version of events and, instead, credit the Government's account.

## B.

Mr. Traylor also challenges his conviction for possession of cocaine with intent to distribute, based on the kilogram of cocaine found in the unclaimed backpack.  To convict Mr. Traylor on this count, the jury had to conclude that he (1) knowingly possessed the cocaine, (2) with the intent to distribute, (3) while knowing that it was a controlled substance.  *See United States v. Carraway*, 612 F.3d 642, 645 (7th Cir. 2010).  Mr. Traylor contests only the element of possession.

Mr. Traylor essentially argues that the Government failed to establish that he possessed the backpack because, in his view, the Government introduced no evidence showing that he behaved as if the bag were his.  In support, he points to the fact that he left the bag on the bus when he got off to smoke, that he failed to respond when an undercover police officer apologized for touching the bag and that he did not claim it.  However, the Government was not required to prove that Mr. Traylor affirmatively claimed ownership of the backpack; circumstantial evidence can be more than enough to support an inference of possession.  *See Carraway*, 612 F.3d at 645.  In the present case, there was significant evidence linking the backpack to Mr. Traylor.  First, he conceded that he previously had borrowed the backpack, that it contained several of his personal belongings (including his clothes and toiletries), and that he previously had traveled with it from Chicago to Decatur.  Additionally, his fingerprints were found on the cocaine packaging, which is further evidence of his control over the bag.  *See, e.g., United States v. Hollingsworth*, 495 F.3d 795, 805-06 (7th Cir. 2007); *United States v. Thornton*, 463 F.3d 693, 699 (7th Cir. 2006).  This evidence was sufficient for the jury to conclude that Mr. Traylor possessed the backpack.  *See United States v. Starks*, 309 F.3d 1017, 1021-22 (7th Cir. 2002) (explaining that juries are entitled to use common sense in making reasonable inferences from circumstantial evidence).

Mr. Traylor has not met his burden of establishing that a rational jury could not have convicted him on the evidence presented.  The district court's judgment therefore is affirmed.

AFFIRMED